# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts.

---

CAPITAL CITY BANK OF DES MOINES *v.* HODGIN and others.[1]

*(Circuit Court, S. D. Iowa, C. D.   June 4, 1885.)*

CHATTEL MORTGAGE—DELIVERY—TWO MORTGAGES EXECUTED ON SAME DAY—
   RECORDING—PRIORITY—PREVIOUS AGREEMENT.
   When a party, to secure an indorser of his notes, in pursuance of a previous
   agreement, executes and files for record a chattel mortgage on his stock in trade,
   and at the same time executes another mortgage on the same goods, to secure
   a creditor, but does not file it for record until the next day, in order that the in-
   dorser may have a first lien on his property, and neither of the mortgagees knows
   at the time of the execution of the mortgages, or at the time of their filing for
   record what has been done, but both of them, on learning what has been done,
   accept them, the mortgage first recorded will be a first lien on the goods.

In Equity.

*W. L. Reed* and *Goode, Wishard & Phillips,* for complainant.

*Nourse & Kauffman* and *N. B. Raymond,* for defendants.

SHIRAS, J.   In the year 1883 Frank L. Hodgin was engaged in the
clothing business at Des Moines, Iowa.   In November of that year he
executed upon his stock in trade two mortgages: one to his mother,
Adaline Hodgin, who resided in Ohio; the other to the Capital City
Bank of Des Moines.   The indebtedness secured by these mortgages
coming due and remaining unpaid, possession of the stock was taken
under the mortgage to Adaline Hodgin, and thereupon the Capital
City Bank brought this suit, claiming the prior right to and lien upon
the mortgaged property.

The question upon which the rights of the parties depends, is that
of priority.   It appears from the evidence that Adaline Hodgin had
indorsed the notes given by F. L. Hodgin to Leon Marks & Co., of
Cincinnati, for goods purchased of them, and that she had been as-
sured that in case of trouble she should be protected by security against

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

such liability. About the first of November, 1883, F. L. Hodgin vis-
ited his mother at her home in Ohio, and she testifies that on that
occasion it was agreed and understood that, upon the son's return to
Des Moines, he should execute to her a chattel mortgage upon the
stock of goods then owned by the son, and kept in the store at Des
Moines. The business at Des Moines had originally been carried on
by Robert and Frank L. Hodgin, under the firm name of Hodgin
Bros.; but, during the summer of 1883, Robert withdrew from the
firm. The indebtedness of the Capital City Bank was for money bor-
rowed and used in the business of the firm; and it appears from the
evidence that the president of the bank had been assured that, in case
of need, the bank should be protected by the execution of a mortgage
upon the stock.

On the twelfth day of November, 1883, F. L. Hodgin signed two
mortgages covering the stock: one to his mother, and the other to the
bank. He instructed his attorney, who drew up the instruments,
that he wished to give his mother the preference, by giving her the
first lien' upon the property. The attorney informed him that this
could be done by recording the mortgage to the mother before the one
to the bank. The mortgage to Mrs. Hodgin was accordingly taken
by the attorney to the recorder's office the afternoon of the twelfth of
November, and filed for record. And on the next morning, the mort-
gage to the bank was, in like manner, filed for record. At the time
of the signing and filing for record of these instruments, neither of
the mortgagees knew of the signing of the same. On or about the
fourteenth of November, 1883, the president of the bank, having
learned of the execution of a mortgage to the bank, sent one of the
employes of the bank to the recorder's office to make inquiry con-
cerning the same; and the recorder informed him that two mort-
gages had been filed: one to Mrs. Hodgin, and one to the bank. A
few days after the recording of the mortgage to Mrs. Hodgin, she was
informed by letter of its execution. Upon part of the complainant,
it is claimed that neither mortgage took effect until a complete deliv-
ery had been made to the mortgagee; that, under the doctrine laid
down in *Cobb* v. *Chase*, 54 Iowa, 253, S. C. 6 N. W. Rep. *300*, the
fact that the mortgage was recorded for the benefit of Mrs. Hodgin,
and knowledge of its execution communicated to her, would not, with-
out affirmative action upon her part, amount to an acceptance of the
instrument, so as to complete the delivery of the mortgage.

In the case of *Cobb* v. *Chase* it appeared that there was an agree-
ment that a mortgage should be given upon a certain kind of prop-
erty, to-wit, live-stock, but the number, nor the specified animals, was
not agreed upon; and under this state of facts the supreme court held
that the previous agreement could not be construed as equivalent to
an acceptance of the mortgage.

In the case of *Everett* v. *Whitney*, 55 Iowa, 146, S. C. 7 N. W.
Rep. 487, a similar question came before the same court, and it was

held that a delivery would be held to have taken place because it had been agreed that the mortgagor was to select the property to be mortgaged, and was to deliver the mortgage to the recorder.

In the case now before the court the agreement between Mrs. Hodgin and her son was that a mortgage was to be executed upon his return to Des Moines upon his stock in trade kept in his store at Des Moines. And this was the identical property included in the mortgage. The facts in this case tend more strongly to prove a delivery and acceptance of the mortgage than those held sufficient in *Everett* v. *Whitney*. Many cases hold that the passing of a deed or mortgage from the actual control of the grantor into the hands of a third party, the conveyance being beneficial to the grantee, raises a presumption of delivery and acceptance. *Tompkins* v. *Wheeler*, 16 Pet. 118; *Robinson* v. *Gould*, 26 Iowa, 89; *Mitchell* v. *Ryan*, 3 Ohio St. 377.

As it appears from the evidence that the mortgage to Mrs. Hodgin was executed in pursuance of a previous agreement, and that she has recognized its validity by taking possession of the property under it, there can be no question that it is binding and in force between the mortgagor and the mortgagee; and that, as between them, it took effect at the time it was delivered to the recorder. The bank holds under a mortgage, which it clearly appears was intended by the mortgagor to be subject to the mortgage executed to Mrs. Hodgin. When knowledge of the execution of the mortgage to the bank was given to the officers of the bank, they knew that a mortgage had been executed to Mrs. Hodgin, and filed for record the day before the filing of the one to the bank. This was notice to the bank that the mortgage to it was intended to be the second lien upon the property. The bank was not bound to accept this mortgage. Had it refused to accept the second mortgage, and obtained a lien, by attachment or execution, upon the property, it could then have presented the question of its rights as against the mortgage to Mrs. Hodgin, upon the theory that it had acquired a lien upon the property before a complete delivery of the mortgage to Mrs. Hodgin. Instead of so doing, however, the bank accepted the mortgage, and claimed only the rights conferred thereby.

The evidence shows that the mortgagor intended to create a second lien upon the property by the delivery of the mortgage to the bank. There is nothing disclosed in the evidence which creates an equity in favor of the bank as against Mrs. Hodgin, and consequently there is nothing which would justify the court in defeating the intent of the mortgagor in the execution of the two mortgages. The mortgagor intended to give the first and paramount lien to Mrs. Hodgin. She has accepted the mortgage as executed, and taken possession of the property under it. The mortgagor intended to create a second lien upon the property in favor of the bank, and with that intent executed the second mortgage. The bank has accepted the mortgage, and, under the facts of the case, must be held to have accepted it as it was in-

tended by the mortgagor. The evidence shows that the property included in the mortgages has been sold, pending this litigation, by consent of all interested, and that it did not realize enough to pay the amount secured by the first mortgage.

As complainants could only reach any surplus left after payment of the prior lien, it follows that there is nothing left to be decreed to complainants, and the bill therefore must be dismissed; and it is so ordered.