49 N.J. Super. 496 (1958)
140 A.2d 403
BENJAMIN STERN AND SAMUEL RUDIN, INDIVIDUALLY AND TRADING AS UNITED NEWS TRANSPORTATION COMPANY, A PARTNERSHIP, PLAINTIFFS-APPELLANTS,
v.
ALFONSO LAROCCA AND JOHN LAROCCA, INDIVIDUALLY AND PARTNERS TRADING AS J.A. LAROCCA BROTHERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1957.
Decided April 11, 1958.
*498 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Frank Fink argued the cause for plaintiffs-appellants (Mr. James J. Carroll, attorney).
Mr. William George argued the cause for defendants-respondents (Mr. John H. Jobes, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an action by the owners of a building to recover on an indemnification agreement for certain losses charged to have arisen out of an accident to an employee of the defendants, who had contracted with plaintiffs to convert a one-story brick building in Jersey City into a garage, in accordance with specific plans and specifications. The contract for the alteration work contains the following indemnification agreement:

"RESPONSIBILITY FOR ACCIDENTS.
The Contractor shall bear all loss or damage from accidents which may occur to any person or persons, by or on account of the prosecution of the work, until possession is taken by the owner. The Contractor must provide all legal and necessary guards, railings, lights, warning signs, etc., during the progress of the work."
Under the heading, "General Conditions," and sub-heading, "Examination of Premises," the contract further provides as follows:
*499 "The contractor shall carefully examine the premises before submitting his bid. No allowance will be made him for lack of full knowledge of all conditions, expect [sic] such underground conditions as are indeterminable before the beginning of the work.
The submission of a proposal will be construed as evidence that such a visit and investigation has been made and later claims for labor, equipment or materials required or difficulties encountered will not be considered."
On September 13, 1949, one Landolfi, an employee of defendants, was injured while at work, when a part of the ceiling fell on him. It is plaintiffs' contention that this happened as a result of the stripping of a partition wall of plaster by heavy blows of a crowbar or hammer administered by Landolfi, the stripping of the plaster being part of the work specified by the contract. Landolfi instituted an action against these plaintiffs on May 16, 1951 to recover damages for his injuries on the theory that they failed to provide a safe place for him to work, particularly in that the ceiling was in a weakened condition due to disrepair. On October 23, 1951 plaintiffs, by their insurance carrier, wrote to defendants, citing the indemnification clause quoted above and demanding that they "take over the defense" of the Landolfi action and "pay any judgment which may be returned," failing which plaintiffs would defend the action and hold defendants liable for any judgment and expenses incurred in defense of the action. Defendants ignored the notice, and plaintiffs defended the action, denying negligence or the breach of any duty to Landolfi, and asserting that his contributory negligence and that of the present defendants and their employees caused the accident.
After a trial of several days the Landolfi action was dismissed on motion at the end of the plaintiff's (in that action) case. Upon appeal this court reversed, finding that there was sufficient evidence from which the jury might find that Landolfi was an invitee on the premises and was injured by reason of a defect in the ceiling of which the defendants (present plaintiffs) had notice, constructive or actual. Landolfi v. Stern, 23 N.J. Super. 286, 288 (App. Div. 1952). Certification was denied by the Supreme Court, *500 11 N.J. 592 (1953). Thereafter the present plaintiffs' insurance carrier settled Landolfi's claim by payment of a sum stated in a release executed by him to the plaintiffs to be $33,500, but which is contended by plaintiffs in the pretrial order and on this appeal to have actually been $53,000. No notice of this settlement was given to the present defendants in advance of its negotiation or execution.
Cross-motions were made for summary judgment in the present action by both parties, in each case on the basis that there existed no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. The motions were submitted upon the basis of a stipulation of facts setting forth the history of the controversy and of the previous litigation, including the pleadings and judicial determinations. Nothing was stipulated concerning the cause of or circumstances surrounding the accident other than that a part of a ceiling fell upon Landolfi on September 13, 1949 while he was upon the premises in the employ of defendants. The basis of plaintiffs' claim is stated to be as recited in the complaint and pretrial order. The complaint is not clear, sounding both in contract on the indemnity clause and in negligence. In the pretrial order the claim for both the amount paid in settlement and for the expenses of defending against the Landolfi action is based, alternatively, on the agreement of indemnity, and on a cause of action for defendants' negligence in failing to inspect the property in advance of commencing the alteration work and to take such precautions as were required by good building practice and would have prevented the accident.
Upon the argument of the motions plaintiffs made no serious attempt to support the negligence, or tort, theory of recovery. The stress was upon the indemnity clause. Defendants argued that the contract should not be construed to indemnify plaintiffs as to losses arising out of their own negligence, citing George M. Brewster & Son v. Catalytic Const. Co., 17 N.J. 20 (1954), and that the indemnification provision was operative as against the contractors only *501 if there were a prior adjudication of a "liability imposed by law" against the owners, a condition asserted to be forever impossible of fulfillment because of plaintiffs' settlement of the Landolfi action without an adjudication of liability. The trial court held the indemnification agreement not effective in favor of the owners insofar as any loss might be due to their own negligence, the agreement not so providing in "unequivocal terms"; that as to the claim for the sum paid in settlement, defendant was entitled to summary judgment, apparently for the reason that the voluntary settlement had prevented the possibility of any adjudication as between Landolfi and the owners of the issue of the latters' negligence; but that as to plaintiffs' expenses incurred in the defense of the Landolfi action liability would accrue under the agreement if the trial of the case sub judice should show that the owners had been free from negligence. Summary judgment was accordingly denied the defendants as to the expense aspect of the claim asserted.

I.
Provisions in a contract whereby one party agrees to indemnify or hold harmless another for claims or suits for damages on account of accidents arising out of the effectuation of the contractual undertaking between the parties are a commonplace in the business world. See Potamkin and Plotka, "Indemnification against Tort Liability," 92 U. of Pa. L. Rev. 347 (1944), passim. But the extent to which they will be held available in favor of the indemnitee where his own negligence has contributed to the casualty giving rise to the claim is based predominantly upon the results of an application of the fundamental rule of construction of contracts which calls for the ascertainment of the intent of the parties in the light not only of the language used but also of the surrounding circumstances and the objects sought to be attained by the parties by their agreement. George M. Brewster & Son v. Catalytic Const. Co., supra (17 N.J. at page 32). Hartford Accident & Indemnity Co. *502 v. Worden-Allen Co., 238 Wis. 124, 297 N.W. 436 (Sup. Ct. 1941); Pacific Indemnity Co. v. California Electric Works, 29 Cal. App.2d 260, 84 P.2d 313 (D. Ct. App. 1938); Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35 (Ct. App. 1936); Salamy v. New York Central System, 1 A.D.2d 27, 146 N.Y.S.2d 814 (3d Dept. 1955).
There will frequently be found in the cases the statement that an indemnification clause will not cover the indemnitee in respect to a claim against it arising out of its own negligence unless the contract contains a clear and unequivocal expression of such intent. George M. Brewster & Son v. Catalytic Const. Co., supra (17 N.J. at page 33); Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 603 (App. Div. 1955); Annotation, 175 A.L.R. 8, 30 (1948); 27 Am. Jur., Indemnity, § 15, p. 464; Note, 14, U. of Pitt. L. Rev. 419 (1953); 12 Fordham L. Rev. 70 (1943). However, a critical evaluation of the cases in the widely variegated types of transactions and indemnity clauses involved will show that the rule referred to is not generally applied to necessarily frustrate coverage of the indemnity clause as against losses partially attributable to negligence of the indemnitee, if the language of the agreement and the surrounding circumstances are indicative of that broad a contractual intent; but that the rule is commonly stated in support of conclusions against coverage in cases where the precise nature of the relationship between the indemnitee's negligence and the particular loss or claim is such as to negate any intent that the parties designed to cover it by their agreement of indemnification. The New Jersey cases which mention the rule of construction are good examples in point.
In the Brewster case, supra, the contracting parties were lessor and lessee of a crane, the lessee agreeing to indemnify the lessor against losses from claims for injuries "occasioned by the operation and handling" of the equipment or "occasioned through the equipment" while in the lessee's possession. The boom of the crane fell and injured an employee *503 of the lessee at the commencement of the first endeavor of the lessee to use it, and this because it was in a defective condition when delivered by the lessor. The court held that in the context of all the surrounding circumstances an implied term of the lease agreement was that a crane would be delivered reasonably suitable for the stipulated use when delivered and that the lessor's liability to the injured workman could not be deemed covered by the contractual indemnity "unless the words be given an arbitrary sense and import plainly out of keeping with the essential reason and spirit of the contract" (17 N.J. at page 33). It is clear that this result did not depend upon the dictum concerning the requirement of an "unequivocal" expression of intent that the negligence of the indemnitee be covered by the agreement, except in the sense that in circumstances so clearly negating an intent to indemnify for a casualty of this particular kind and causal origin, a contrary intent would have had to be unequivocally spelled out in the contract.
In the Longi case, supra, a provision in a lease between a municipality and a prospective builder upon the leased site whereby the lessee was to indemnify the city for all claims arising out of the lessee's conduct and management of the premises and adjacent sidewalks was held not applicable in respect to a claim arising out of a sidewalk defect attributable to subway construction work by the city subsequent to and in no way connected with the making of the lease and not in contemplation at that time. The holding of the court was that the indemnification agreement was not applicable to the particular claim against the city (by an injured passerby on the sidewalk) as "it was not within the contemplation of the parties" (34 N.J. Super. at page 603). A contract of indemnity was held construable "in accordance with the rules for the construction of contracts generally." Ibid. We reaffirm the correctness of that statement.
By the overwhelming weight of authority, something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make *504 them so if the intent otherwise sufficiently appears from language and circumstances. Russell, for Use of Continental Casualty Co. v. Shell Oil Co., 339 Ill. App. 168, 89 N.E.2d 415 (App. Ct. 1949); Buckeye Cotton Oil Co. v. Louisville & N. Ry. Co., 24 F.2d 347 (6 Cir. 1928); Salamy v. New York Central System, supra; Rice v. Pennsylvania R. Co., 202 F.2d 861 (2 Cir. 1953); St. Paul Mercury Indemnity Co. v. Kopp, 121 N.E.2d 23 (Ohio Ct. App. 1954); Thibault v. City of New York, 154 N.Y.S.2d 338 (Sup. Ct. 1956); Mitchell's, Inc., v. Friedman, 303 S.W.2d 775 (Tex. Sup. Ct. 1957); Smoke v. Turner Const. Co., 54 F. Supp. 369, 371 (D.C.D. Del. 1944); Griffiths v. Henry Broderick, Inc., 27 Wash.2d 901, 182 P.2d 18, 175 A.L.R. 1 (Sup. Ct. 1947); Annotation, 175 A.L.R., op. cit., supra, at p. 37.
While some aspects of the circumstances surrounding the accident underlying the loss involved in the present case remain unresolved on the record before us, enough is shown to render relevant a discussion of the kinds of factors which have been held significant in other cases involving construction of the intent and effect of indemnity clauses, particularly in owner-contractor situations. The contractor was to exercise exclusive possession and control of the work and the premises. The negligence of the owners, if any, was passive, not active. The immediate causation of the fall of the ceiling was probably the work entailed by the alteration pursuant to the contract, either in and of itself, or in conjunction with a weakened condition of the ceiling, whether or not attributable to neglect of the owner. We do not make these observations as findings of fact but merely to lay a tentative basis for a consideration of the rules of law which will be applicable to the findings of fact the trial court or jury will be required to make upon the remand.
In the owner-contractor or contractor-subcontractor type of situation, judicial construction of indemnity clauses to cover the indemnitee's negligence notwithstanding absence of an express provision to that effect in the contract is common. See St. Paul Mercury Indemnity Co. v. Kopp, *505 supra; Dayton Fabricated Steel Co. v. Dayton Town & Country, Inc., 99 Ohio App. 309, 133 N.E.2d 423 (Ct. App. 1954); Thibault v. City of New York, supra; Smoke v. Turner Const. Co., supra; Russell, for Use of Continental Casualty Co. v. Shell Oil Co., supra; Annotation, 175 A.L.R., op. cit., supra, at p. 144; Potamkin & Plotka, op. cit., supra (92 U. of Pa. L. Rev., at p. 355). In this area it is practically universally held for the plaintiff if the accident was caused by the concurring negligence of the indemnitee and indemnitor and the negligence of the indemnitee was only passive, or if the negligence of the indemnitor was regarded as "active" in comparison with that of the indemnitee. E.g., Schwartz v. Merola Bros. Const. Corp., 263 App. Div. 631, 34 N.Y.S.2d 220 (1st Dept. 1942) (concurrent "passive" negligence of indemnitor and indemnitee); John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill. 331, 141 N.E. 739, 38 A.L.R. 559 (Sup. Ct. 1923) ("passive" negligence of indemnitee, "active" negligence of indemnitor); Hartford Accident & Indemnity Co. v. Worden-Allen Co., supra ("passive" negligence of indemnitee concurred with negligence of indemnitor). See also National Transit Co. v. Davis, 6 F.2d 729 (3 Cir. 1925), certiorari denied 269 U.S. 579, 46 S.Ct. 104, 70 L.Ed. 422 (1925).
Some cases have expressly indicated that there is a distinction between a situation involving an accident due solely to the negligence of the indemnitee and one caused by the concurring negligence of both parties to the contract. Sinclair Prairie Oil v. Thornley, 127 F.2d 128 (10 Cir. 1942); Hartford Accident & Indemnity Co. v. Worden-Allen Co., supra. Others have taken the view that the negligence of the indemnitor is immaterial, as long as the negligence of the indemnitee was not the sole cause. Schwartz v. Merola Bros. Const. Corp., supra; United States Steel Corporation v. Emerson-Comstock Co., 141 F. Supp. 143 (D.C.N.D. Ill. 1956); see also Dudar v. Milef Realty Corp., 258 N.Y. 415, 180 N.E. 102 (Ct. App. 1932); Buckeye Cotton Oil Co. v. Louisville & N. Ry. Co., supra. *506 In determining the scope of the indemnity the question as to whether the indemnitor was in exclusive possession of the place or instrumentality productive of the casualty is generally given great weight in ascertainment of intent. North American Ry. Construction Co. v. Cincinnati Traction Co., 172 F. 214 (7 Cir. 1909); United States v. Wallace, 18 F.2d 20 (9 Cir. 1927); Central Surety & Ins. Corp. v. Hinton, 233 Mo. App. 1218, 130 S.W.2d 235 (Ct. App. 1939); Thompson-Starrett Co. v. Otis Elevator Co., supra. Moreover, as the cases point out, to preclude recovery in every case where the negligence of the indemnitee contributed at all to the loss would leave practically no occasion where the indemnity provision would be operative. See Hartford Accident & Indemnity Co. v. Worden-Allen Co., supra (297 N.W. at page 439); National Transit Co. v. Davis, supra (6 F.2d at pages 731, 732); Rice v. Pennsylvania R. Co., supra (202 F.2d at page 862).
In terms of the actual results of the great preponderance of the decided cases, therefore, the indemnity clause before us would be construed to allow recovery for the plaintiff, if, on a trial of the factual issues, it were determined that this particular accident occurred by reason of the concurrence of passive negligence of the indemnitee in reference to the condition of the ceiling and affirmative acts of the contractor's employees in effectuation of the contracted work, particularly in view of the retention of full control over the premises by the contractor and the reference in the agreement to the owners' retaking possession as the termination of the liability period. On the inconclusive factual showing on the motion below, accordingly, the entry of summary judgment for the defendant, so far as posited on the Brewster case, would appear to have been incorrect. (We reserve for later consideration the effect of the settlement of the Landolfi action.)
But we think a basis for defendants' liability in the present case transcends mere concepts of fault of the parties in relation to the causation of the underlying accident. The controlling factors must, as always in ascertaining contractual *507 intent where language is less than express, be found in the circumstances surrounding the transaction and the objects to be subserved. This was an old building, cut down in size three years previously from an original four-story building (23 N.J. Super. at page 287). The owners had nothing to do with the actual process of the work of alteration under the contract. As seen above, the contract contemplated that the contractors were to completely familiarize themselves with the building before doing the work. It was further provided therein that they were to do the job in entirety, including "all minor details necessary." In providing in the agreement that the contractors were to "bear all loss or damage from accidents which may occur to any person or persons, by or on account of the prosecution of the work until possession is taken by the owner," the parties must be taken to have had in mind what experience and litigation in this field teach would be the most likely occasion for such a claim, an accident to an employee of the contractors during the work. Moreover, since the Workmen's Compensation Act would preclude a common law action by such an employee against the contractors, an action of the kind here brought against the owners by the employee was one of the contingencies clearly to be deemed to have been contemplated by the parties in drawing the agreement. We deem it to have plainly been the intent of the parties that the absent owner should be entirely relieved of any concern over a claim arising out of such an accident, no matter whose fault it was, so long as it arose out of the doing of the work. Presumably the contractors were willing to take their chances with respect to any defective condition of the structure, relying either upon advance inspection and precautions in doing the work or the availability of insurance to cover the risk.
The intent that the owners be absolutely indemnified in respect to claims or losses "from accidents to any person or persons by or on account of the prosecution of the work" would be frustrated if the obligation were construed to be qualified by the kind or degree of fault or negligence causally *508 related to the accident, so long as it was precipitated by any phase of the doing of the work contracted for. Cf. Allen v. J.G. McDonald Chocolate Co., 62 Utah 273, 218 P. 971, 974 (Sup. Ct. 1923); Russell, for Use of Continental Casualty Co. v. Shell Oil Co., supra (89 N.E.2d at page 417); Northern Pac. Ry. Co. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226, 228 (Sup. Ct. 1939). Even those who are in fact prudent and careful are subject to the hazard of lawsuits and to the possibility of adverse judgments. The alteration project here contracted for being a likely source of such actions, the clear intent of the indemnification agreement was to relieve the owners of any concern whatever in reference thereto and for the contractors to assume the risk and save the owners harmless. This was a normal, sensible and bargained-for business arrangement, and there is no reason why the courts should not give it the sanction they would accord any other business contract equally clearly expressed. United States Steel Corporation v. Emerson-Comstock Co., supra (141 F. Supp., at pages 145, 146); Dayton Fabricated Steel Co. v. Dayton Town & Country, Inc., supra (133 N.E.2d at page 426); cf. Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956); Four-G Corporation v. Ruta, 25 N.J. 503 (1958); and see Kepner, "Commercial Law," 10 Rutgers L. Rev. 161, 164-166 (1955); Marriott, "Indemnities in Contracts," 11 Indust. L. Rev. 110 (1956).
We would distinguish the situation which would be presented had the accident here occurred by reason of an intrusion of an agent of the owners on the premises during the course of the work and his injuring one of contractors' workmen by an act of negligence (as, e.g., by dropping a keg of nails on his foot). The indemnity clause would in such case be inapplicable, not by reason of the attribution of the casualty to an act of negligence of the owner, as such, but because loss from such a contingency could not fairly be characterized as within the contemplation of the parties, in the circumstances, and within language embracing accidents occurring "by or on account of the *509 prosecution of the work." Cf. Thompson-Starrett Co. v. Otis Elevator Co., supra; Perry v. Payne, 217 Pa. 252, 66 A. 553, 555, 11 L.R.A., N.S. 1173 (Sup. Ct. 1907).
In view of the inconclusiveness of the factual record now before us, we think we should go no further in applying the law to such precise facts as may be developed on the remand than to say that if it is found that there was a cause and effect relationship between the doing of any phase of the work contracted for and the falling of the plaster, regardless of fault or negligence on the part of the contractors, the ensuing claim by Landolfi against the owners was a contemplated basis for indemnification by the contractors under the agreement, and this assuming the owners were negligent in respect to the previous condition of the ceiling, and liable, as between themselves and Landolfi, in tort for having failed to have the premises in safe condition for him to carry on his work. Should this hypothesis not meet the total factual picture which eventuates, it will be for the trial court to rule thereon conformably with the principles hereinbefore stated properly applicable to the construction of the agreement.

II.
The next inquiry is whether, if the Landolfi claim was one as to which plaintiffs were entitled to be saved harmless by defendants, the right of indemnification was defeated by plaintiffs' settlement of the claim instead of letting it go to judgment against them. It may be noted, parenthetically, that under the view of the entire matter pressed upon the trial court by defendants, had the Landolfi action gone to judgment against plaintiffs, the latter would have been entitled to recover nothing against the defendants on the indemnity agreement anyway, as such a judgment would have established the owners' negligence in respect to the accident, thereby obviating any recovery pursuant to the indemnification agreement under the construction and legal effect thereof advanced by the defendants. If, on the other *510 hand, judgment in the Landolfi case went in favor of the owners, the indemnification agreement would be of no use to them except to recover the expenses of the litigation. It thus is clear that an acceptance of defendants' position means the indemnity clause could never avail the owners anything insofar as protecting them against the principal amount of any damage claim against them by an employee of the contractors (or, for that matter, by any other plaintiff).
We are firmly of the opinion that plaintiffs' settlement of the Landolfi claim does not have the automatic effect of defeating a right to indemnity under the agreement. Had the settlement been made in the face of an undertaking by defendants to defend the Landolfi claim and without their consent, a different question would be presented. Here defendants were notified of the pendency of the action and requested to defend it. Their refusal to do so put the plaintiffs in the position where they were compelled to defend the claim themselves. In that state of affairs they were justified in using such sound business prudence in handling the matter as a reasonably careful defendant so circumstanced would be expected to exercise. Settlement of such a claim is not per se an unreasonable recourse. Here the case had been tried once on its merits, a dismissal obtained, but a reversal thereof sustained on appeal. If the action of the defendants in the Landolfi suit was taken in good faith, and reasonable under all the circumstances, including the risk of going to a decision at the hands of a jury, there was no break in the chain of causation between the accident and the loss involved in the payment. See Chicago, R.I & P.R. Co. v. Dobry Flour Mills, 211 F.2d 785 (10 Cir. 1954), certiorari denied 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954), noted, 35 Or. L. Rev. 54 (1955); Luton Mining Co. v. Louisville & N.R. Co., 276 Ky. 321, 123 S.W.2d 1055 (Ct. App. 1938); Potamkin & Plotka, op. cit., supra (92 U. of Pa. L. Rev., at p. 360, f.n. 55, 57); cf. State ex rel. Macri v. City of Bremerton, 2 Wash.2d 243, 97 P.2d 1066 (Sup. Ct. 1940). The settlement payment made by the plaintiffs can hardly be *511 described as "voluntary" in the sense of gratuitous. It was made under the considerable pressure of the knowledge that an appellate court had held the factual evidence adduced at the previous trial sufficient to create an issue of fact concerning the liability of these plaintiffs to Landolfi. Cf. Heath v. Channel Lumber Co., 25 N.J. Super. 6, 12 (App. Div. 1953).
It will be for the fact-finder to determine upon the remand whether the settlement payment was reasonable under all the circumstances and made in good faith.
In view of our reversal of the summary judgment on considerations relevant to the contract claim and the absence of any argument on the appeal concerning the negligence basis of the complaint, we do not consider the latter.
In all fairness to the trial court we feel impelled to remark that the out-of-state authorities cited in this opinion were apparently not submitted to it by the plaintiffs, none of them having been cited in their appellate brief or argument.
Reversed and remanded for further proceedings consistent with this opinion.