64 N.J. Super. 437 (1960)
166 A.2d 387
MICHAEL POLIT, PLAINTIFF,
v.
CURTISS WRIGHT CORP., A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
THE FRANK A. McBRIDE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1960.
Decided December 15, 1960.
*439 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Robert E. Tarleton argued the cause for the third-party defendant-appellant (Messrs. Beggans and Keale, attorneys; Mr. James P. Beggans, of counsel; Mr. Robert E. Tarleton, on the brief).
Mr. George P. Moser argued the cause for defendant and third-party plaintiff-respondent (Mr. William V. Roveto, of counsel and on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
By this appeal the third-party defendant, The Frank A. McBride Company (McBride), seeks to reverse a judgment entered against it in the Superior Court, Law Division, in favor of Curtiss Wright Corp. (Curtiss), plaintiff in a third-party action based on an indemnification agreement hereinafter described. Polit, a McBride employee, was awarded damages in the sum of $18,944 for personal injuries, suffered by him on July 12, 1957, as the result of the alleged negligence of Curtiss on whose property at Wood Ridge Polit was working when injured. He was severely burned when a pneumatic jackhammer, which he was operating, came into contact with 250-watt, 2300-volt underground electric wiring housed in concrete on premises of Curtiss. His judgment against Curtis was based on a claim that it had failed to provide him with a reasonably safe place to work and had failed to warn him of the existence of a dangerous and unsafe condition on its premises, specifically the presence of the underground electric wires. The propriety of the aforesaid judgment against Curtiss in favor of Polit is not challenged on this appeal.
The judgment in the third-party action in favor of Curtiss against McBride, in the sum of $20,613.91, was entered as the result of the following procedure: Initially, the trial *440 court determined, as "a matter of law," that McBride was obliged to reimburse Curtiss under the terms of the aforesaid agreement, which agreement, the court held, "encompassed the incident" on which the Polit action was based. Following the rendition of the aforesaid verdict of $18,944 in favor of Polit against Curtiss, the court, on due notice, entered the above mentioned judgment of $20,613.91 in favor of Curtiss against McBride in the third-party action, reflecting therein the amount of the aforesaid Polit verdict together with attorneys fees of $1,050 and expenses of $619, determined by the court reasonably to have been incurred by Curtiss in defense of the Polit action. McBride does not question the finding that the allowances were "reasonable and necessary" or that the original verdict in favor of Polit was reasonable in amount. It contends that the trial court erred in holding that, as a matter of law, it was liable to Curtiss under the indemnification clause, and argues that the court erred in refusing to submit to the jury for its decision certain factual issues, hereinafter set forth, claimed by McBride necessarily to be resolved before it could be found liable to Curtiss.
The genesis of the present controversy was a contract which McBride had entered into with Curtiss to install a high pressure air charging and storage system on the Curtiss property, under which contract McBride agreed to furnish Curtiss the "labor, material and incidentals required for the installation of 8" cast iron drain line, including all necessary excavation, backfill, cutting and patching of concrete and black top pavement * * *" at a price which was expressed as "based on hand excavation due to the many existing underground lines in this area, which would make machine excavation extremely hazardous."
The contract contained the following indemnification clause:
"In connection with the work we [McBride] have contracted to do for your company, we specifically assume all risks of loss, damage or injury from any cause to property or persons used or employed *441 on or in connection with the work and all risks of loss, damage or injury (including death) to any property or persons wherever located resulting from any action or operation under the contract or in connection with the work, and we further undertake and promise to secure, protect, defend, indemnify and hold harmless your Company from and against all such loss, damage or injury and from all costs and expenses connected therewith."
The circumstances surrounding the happening of the accident are not disputed. The trench-digging, in which Polit was engaged when injured, was in preparation for the installation of the drain line. Much of the work had been done by the use of pick and shovel, but a jackhammer had been used to cut through the surface of the roadway transversed by part of the trench. At the time of the accident plaintiff was using the hammer, not in cutting the roadway surface, but in an attempt to cut into a block of concrete which had been uncovered during the digging. The hammer had penetrated the block to a depth of about four inches when it struck the aforesaid wiring which, unknown to Polit, was encased in the concrete.
At trial extensive testimony was taken, much of it in sharp conflict, involving a variety of issues which, appellant asserts, had to be resolved by the jury to determine the extent of McBride's liability under the indemnity agreement. It contends that among such controversial issues were whether plaintiff's injuries proximately were caused by the sole negligence of Curtiss and, if so, whether such negligence was active or passive; and whether there was an uncontemplated deviation from the work covered by the contract and, if so, whether it was the intention of the parties that Curtiss should be indemnified by McBride if Polit's injuries resulted therefrom. We disagree with such contention. The principles enunciated in Cozzi v. Owens Corning Fiber Glass Corp., 63 N.J. Super. 117 (App. Div. 1960), decided since the trial of the instant case, are pertinent in construing the indemnification clause here involved and fully justify the trial court's challenged construction thereof.
*442 In Cozzi, in sustaining the judgment in favor of the indemnitee, Judge Goldmann's opinion for this court recognized that the fundamental rule "governing the construction of contracts generally * * * calls for the ascertainment of the intention of the parties in the light not only of the language used but also of the surrounding circumstances and the objects sought to be attained by them under their agreement," citing Stern v. Larocca, 49 N.J. Super. 496, 501 (App. Div. 1958), and George M. Brewster & Son v. Catalytic Const. Co., 17 N.J. 20, 32 (1954). The opinion noted the general rule "that where the act of negligence of the indemnitee is the sole cause of the accident, he is not entitled to recover against the indemnitor unless an intent to indemnify is unequivocally spelled out in the contract, the surrounding circumstances, and the objects to be attained by the parties * * *." Cozzi, supra, 63 N.J. Super., at p. 121. It pointed out that "cases denying indemnification" involved clauses "more restrictive in expression" than the one there under scrutiny. It found that the indemnification clause in Cozzi was free of ambiguity and was "clear enough and broad enough to leave little doubt" that it covered the accident suffered by plaintiff. The court said, at p. 123:
"* * * Surely it is not necessary that parties incorporate into the language of their agreement all the specific possibilities through which the indemnitee-owner might cause an accident  by sole negligence, concurrent negligence, active sole negligence, passive concurrent negligence, etc."
The court emphasized (at pp. 123-124) that when "the language used is broad enough to manifest an intention to indemnify against an accident such as happened, irrespective of fault, the court should give it effect according to its plain and clear meaning."
Although the indemnification clause in the contract in the instant case does not in its coverage include in specific language, as in Cozzi, supra, accidents to the contractor's *443 employees, whether occasioned by the "Owner or his employees * * *," its language is still "clear and unequivocal." McBride assumed, as above stated, by its contract with Curtiss, "all * * * loss, damage, or injury from any cause to * * * persons * * * employed on or in connection with the work * * * wherever located resulting from any action or operation under the contract or in connection with the work * * *." (Emphasis supplied) The provision for indemnification for injury to a McBride employee from any cause is unambiguous. It includes injury to Polit arising "in connection with the work" covered by the Curtiss-McBride contract, whether flowing from negligence of Curtiss or McBride or both. If the negligence of the indemnitee Curtiss be the cause, the protective scope of the indemnification may not be diminished, whether such negligence be active instead of passive or be sole instead of concurrent. To hold otherwise would be to reject the clear meaning of the words which the parties employed in what was described in Cozzi, supra, 63 N.J. Super., at p. 124, as a "business arrangement sensibly entered into and bargained for by the parties." The trial court properly rejected the contention that such questions had to be resolved by the jury.
Remaining to be considered is appellant's contention that the court erred in holding, as a matter of law, that Polit's injury occurred in connection with the work envisioned by the Curtiss-McBride contract or from an action or operation thereunder. It stresses that in Stern v. Larocca, supra, in which an employee of the indemnitor had been injured by falling plaster while he was on the property of the indemnitee, the indemnification clause related to "loss or damage from accidents which may occur to any person or persons, by or on account of the prosecution of the work * * *." (Stern, supra, 49 N.J. Super., at pp. 498, 508-509). It notes that, because of the inconclusiveness of the factual record before this court in Stern, the case had to be remanded in order that it might be determined whether there was "a cause and *444 effect relationship between the doing of any phase of the work contracted for and the falling of the plaster." Stern, supra, at p. 509. Appellant does not contend (nor could it justifiably do so under the evidence) that Polit, when injured, was not engaged as a McBride employee, in the general work contemplated by the parties under the contract. However, emphasizing the similarity of the language in the Stern-Larocca contract and that in the Curtiss-McBride agreement, it urges that the proofs showed that "a deviation from the original plans drawn and laid out" by Curtiss became necessary when it was found that a portion of the "contemplated east-west trench ran directly into the bunker house"; that although with respect to the alleged deviation there was opposing testimony from Curtiss' engineer, "at least a factual question with reference thereto was created." It asserts that the proofs demonstrated that the "plaintiff's injury occurred at the site of this deviation" and that such factor was "significant in shedding light on whether or not it was the intent of the parties that McBride should indemnify Curtiss Wright for injuries sustained by reason of a condition of Curtiss Wright's premises in the performance of work in an area not depicted on the plans and blue prints."
The trial court found that the aforesaid "deviation" in the trench line presented no issue requiring resolution by the jury and that it did not adversely affect Curtiss' right of recovery from McBride under the broad language of the indemnification clause. We are in accord. The circumstance that there was an alteration in the trench course to avoid the bunker house did not change the fact that Polit, when injured, was engaged in work encompassed within the Curtiss-McBride contract.
The judgment is affirmed.