688 A.2d 1088

DEREK MAUTZ, PLAINTIFF, v. J.P. PATTI COMPANY, REMY ASSOCIATES, A NEW JERSEY PARTNERSHIP, CATERPILLAR, INC., FOLEY MACHINERY CO., DEFENDANTS.

REMY ASSOCIATES, DEFENDANT–THIRD PARTY PLAINTIFF–APPELLANT, v. GAGLIANO BROS. CO. AND JOSEPH GAGLIANO T/A GAGLIANO BROTHERS AND GAGLIANO BROTHERS EXCAVATING CO., THIRD–PARTY–DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 8, 1997—Decided February 24, 1997.

Before Judges KING, KEEFE and CONLEY.

*Richard E. Snyder* argued the cause for appellant (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski*, attorneys; *Mr. Snyder*, on the brief).

*Anthony J. Andolino* argued the cause for respondent (*Gallo Geffner Fenster*, attorneys; *Mr. Andolino, Peter J. Heck* and *Valerie A. Vladyka*, on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

## I.

This case involves interpretation of a contractual indemnification clause in an agreement between a general contractor and a subcontractor. The case arises from a personal injury claim made by the subcontractor's employee sustained at a June 4, 1990 job-site accident during installation of a drainage system. The Law Division judge dismissed the general contractor's claim for contractual indemnity, finding the "hold harmless" clause in the contract nonefficacious. We disagree and reverse. We find that the clause expressly and unambiguously provides for partial indemnity, to the extent the subcontractor's negligent acts or omissions contributed to its employee's injury.

## II.

In 1992 plaintiff Derek Mautz sued several defendants for his severe personal injury, partial amputation of an arm, suffered on June 4, 1990 while installing a drainage grate in a catch-basin at a

construction site in Ringwood Industrial Park, Ringwood, New Jersey. Plaintiff was an employee of Gagliano Brothers Excavating Company (Gagliano), a subcontractor. Plaintiff sued Remy Associates (Remy), the owner acting as general contractor on the job-site; Caterpillar, Inc., the manufacturer of the front-end loader involved in the accident; and Foley Machinery Co., which sold the loader to his employer, Gagliano. Remy then joined plaintiff's employer, Gagliano, as a third-party defendant seeking contractual indemnification.

In August 1994 Gagliano moved to dismiss Remy's claim for contractual indemnity. Remy responded by filing a cross-motion for summary judgment. After argument, the Law Division judge granted Gagliano's motion and denied Remy's motion, ruling as a matter of law that the contractual indemnity clause was ambiguous and ineffective in shifting any portion of the cost of plaintiff's claim from Remy to Gagliano.

After this adverse ruling, Remy settled plaintiff's claim for about $1,150,000. A consent judgment memorialized the settlement. A few months later plaintiff settled with the remaining defendants, Caterpillar and Foley, for $400,000. Remy then appealed from the adverse ruling on its indemnity claim.

### III.

Plaintiff was working for Gagliano laying pipe and installing a catch-basin in an excavated trench about five-feet deep. Joe Gagliano was operating a Caterpillar 920 front-end loader. While plaintiff was lowering a two-hundred-pound steel grate for the catch-basin into the excavation, the Caterpillar lunged forward, fell into the excavation, and trapped plaintiff's arm and hand between the catch-basin and the bucket. Plaintiff lost part of his arm.

Remy was the general contractor. (Patti Roofing, an affiliate of Remy, was actually the owner.) Gagliano was a subcontractor hired to perform site clearing, excavation and drainage work. Remy contracted with Gagliano in a standard-form written sub-

contract entitled "Standard Form of Agreement Between Contractor and Subcontractor," American Institute of Architects (AIA) Document A401, executed on September 7, 1989.

Plaintiff recovered his workers' compensation benefits and then targeted Remy, as general contractor, in this third-party action. Plaintiff relied on two expert engineers, Robert Ehrlich and James Vigani, to establish Remy's liability in this action. Their reports are part of this record and were relied upon in the summary judgment proceedings. These two experts blamed the accident in substantial part on both Remy and Gagliano.

Ehrlich said the accident was caused by the collapse of the trench wall because it was not properly shored as required by Occupational Health and Safety Administration (OSHA) regulations. Ehrlich concluded responsibility fell on: (1) Gagliano Brothers for not shoring the walls of the trench; (2) Joe Gagliano, personally, for operating the front-end loader too close to the excavation wall; (3) Remy, acting as both owner and general contractor, as "responsible for the general safety of the worksite and responsible that safe work practices were observed;" (4) Foley for selling an unsafe vehicle; and (5) Caterpillar for failure to warn and improper design.

Vigani concluded that two OSHA violations caused the accident: (1) no shoring or stabilization of the excavation walls existed, and (2) no stop logs or barricades placed to prevent the operator from driving the equipment into the excavation. Vigani said that:

Based upon my review of the material provided, and the above understandings, it is my opinion that the accident in which Mr. Mautz was injured was a direct result of the lack of an adequate safety program at the job site, and by improper and unsafe procedures being used by Gagliano Brothers Excavation. It is my further opinion that it was the general contractor's [Remy] responsibility to implement a safety program and to ensure, through monitoring of the work performed, that the program was being complied with. Had an appropriate safety program been in place and been complied with, the subject accident would not have occurred.

Confronted with this proposed evidence supporting plaintiff's liability case, Remy settled and turned to this contractual indemnity claim.

## IV.

The indemnification clause in the contract between Remy, the general contractor, and Gagliano, the subcontractor, states:

11.11 Indemnification

11.11.1 *To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Architect and the Contractor and all of their agents and employees from and against all claims, damages, losses and expenses including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract,* provided that any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, *to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder.* Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 11.11.

11.11.2 In any and all claims against the Owner, the Architect, or the Contractor or any of their agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this Paragraph 11.11 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

[emphasis supplied.]

Perhaps also pertinent to the understanding of the parties is:

11.5.1 The Subcontractor shall take all reasonable measures initiated by the Contractor and with all applicable laws, ordinances, rules, regulations, and orders of any public authority for the safety of persons or property in accordance with the requirements of the Contract Documents.

Our review of this documentary record discloses that Remy itself was not engaged in any of the work activity at the job site. Remy did not in any sense coordinate or direct the work. Gagliano was the only contractor actively involved at the accident site. Remy's responsibility to plaintiff derived from its nondelegable duty under the OSHA regulations to provide for safety at the job site, not from an actual participation in the work. Indeed, Remy appeared to have had no supervisory interest in the particulars of the work or job safety, but left these matters to Gagliano as the supposedly responsible subcontractor.

The Law Division judge found that in this circumstance the § 11.11 indemnification agreement did not "unequivocally express an intention that Gagliano Brothers will indemnify Remy Associates for its own negligence" and dismissed the indemnity claim by Remy. We disagree with this outright dismissal and conclude that Gagliano did expressly contract to indemnify Remy for claims arising from the performance of the contract, such as plaintiff's claim in this case, "to the extent caused in whole or in part by any negligent act or omission of the subcontractor [Gagliano]."

## V.

The general principles of construction of contractual indemnity agreements, or "hold harmless" clauses, are clear.

> Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. *Cozzi v. Owens Corning Fiber Glass Corp.,* 63 *N.J.Super.* 117, 121, 164 *A.2d* 69 (App.Div.1960); *Longi v. Raymond–Commerce Corp.,* 34 *N.J.Super.* 593, 603, 113 *A.2d* 69 (App.Div.1955). When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. *See Longi v. Raymond–Commerce Corp., supra,* 34 *N.J.Super.* at 603, 113 *A.2d* 69; *Huck v. Gabriel Realty,* 136 *N.J.Super.* 468, 475, 346 *A.2d* 628 (Law Div.1975). Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms. *Longi v. Raymond–Commerce Corp., supra,* 34 *N.J.Super.* at 603, 113 *A.2d* 69; *see Carbone v. Cortlandt Realty Corp.,* 58 *N.J.* 366, 368, 277 *A.2d* 542 (1971); *George M. Brewster & Son, Inc. v. Catalytic Const. Co.,* 17 *N.J.* 20, 33, 109 *A.2d* 805 (1954); *Rommell v. United States Steel Corp.,* 66 *N.J.Super.* 30, 43, 168 *A.2d* 437 (App.Div.), *certif. denied,* 34 *N.J.* 580, 170 *A.2d* 544 (1961); *Cozzi v. Owens Corning Fiber Glass Corp., supra,* 63 *N.J.Super.* at 121, 164 *A.2d* 69; *Polit v. Curtiss Wright Corp.,* 64 *N.J.Super.* 437, 442–43, 166 *A.2d* 387 (App.Div.1960); *Stern v. Larocca,* 49 *N.J.Super.* 496, 502, 140 *A.2d* 403 (App.Div. 1958).
>
> [*Ramos v. Browning Ferris Industries,* 103 *N.J.* 177, 192–92, 510 A.2d 1152 (1986).]

As Judge Pressler stated, when carefully summarizing the purpose of these agreements 20 years ago:

> As a matter of well-settled legal doctrine, it is clear that an indemnity provision is to be construed in accordance with the rules for the construction of contracts generally, and hence that the judicial task is to ascertain the intention of the parties from the language used, the surrounding circumstances and the objects sought to be attained by the parties under their agreement. It is also a well-settled principle in this jurisdiction that there is no essential public policy impedi-

ment to an indemnitor undertaking to indemnify the indemnitee in respect of the indemnitee's own negligence. That principle derives from the judicial recognition that ordinarily the financial responsibility for the risk of injury during the course of a construction project is shifted in any event by the primary parties to their insurance carriers and the parties ought therefore to be free to determine how the insurance burdens will be distributed between them and who will pay for specific coverage for specific risks. The impact of the indemnity agreement between owner and contractor and contractor and subcontractor is therefore, in practical effect, the parties' allocation between themselves of the total required insurance protection for the project.

[*Doloughty v. Blanchard Const. Co.*, 139 *N.J.Super.* 110, 116, 352 *A.2d* 613 (Law Div.1976).]

We are cognizant of the statement of Justice Pollock for the Court in *Ramos*, 103 *N.J.* at 191, 510 *A.2d* 1152, that "nothing in the [Workers' Compensation] Act precludes an employer from assuming a contractual duty to indemnify a third party through an express agreement." However, an indemnitee cannot be indemnified for its own negligence if it is the only negligent party. *N.J.S.A.* 2A:40A–1.[1] This is the only pertinent public policy caveat: if Remy was solely negligent and Gagliano free of fault, this action would be barred by this statute, no matter what the contractual clause said. Thus, our interpretative task is to determine the parties' intent, if that intent is made clear.

■ The indemnity provision is somewhat stilted in expression. But stripped of unnecessary surplusage for purposes of our analysis, the clause says:

---

[1] *N.J.S.A.* 2A:40A–1 states:

A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract, agreement or purchase order, relative to the construction, alteration, repair, maintenance, servicing, or security of a building, structure, highway, railroad, appurtenance and appliance, including moving, demolition, excavating, grading, clearing, site preparation or development of real property connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents, or employees, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workmen's compensation or agreement issued by an authorized insurer.

> To the fullest extent permitted by law, the Subcontractor [Gagliano] shall indemnify ... the Contractor [Remy] from all claims ... arising out of or resulting from the performance of the Subcontractor's work under this Subcontract, provided that any such claim ... is attributable to bodily injury ... to the extent caused in whole or in part by any negligent act or omission of the Subcontractor, ... regardless of whether it is caused in part by a party indemnified hereunder....

We find this clause clear and unambiguous. The clause states Gagliano's obligation to indemnify Remy but only *to the extent* that the claim is caused by Gagliano's own negligence. The clause does not provide for indemnity to Remy for Remy's own negligence, but only to the extent of Gagliano's negligence. And the indemnity is available "regardless of whether [the claim] is caused in part by a party indemnified hereunder [Remy]."

We can find only one other court's interpretation of this precise clause. In *Braegelmann v. Horizon Development Co.*, 371 *N.W.*2d 644 (Minn.Ct.App.1985), a construction accident case, the court observed that "The additional phrase, 'to the extent caused,' however, suggests a 'comparative negligence' construction under which each party is accountable 'to the extent' their negligence contributes to the injury...." *Id.* at 646. The Minnesota court concluded that: "Under the terms of this indemnification clause, the *general contractor is not contractually entitled* to indemnification from the subcontractor to the extent the damages were caused by the general contractor's own negligence." *Id.* at 646–47. We agree with the "comparative negligence" analogy. The clause seemingly was intended to provide indemnity but only to the extent the subcontractor's negligence contributed to the loss.

We reject Remy's claim for recovery of the full settlement under any theory of implied indemnity or implied contract damages in this situation. Implied indemnity is obviously disfavored in this context, *see Ramos v. Browning Ferris Industries*, 103 *N.J.* at 189, 510 *A.*2d 1152, and only express indemnity agreements are deemed efficacious. *Id.* at 190–91, 510 *A.*2d 1152.

As noted, Section 11.5.1 states: "The Subcontractor shall take all reasonable measures initiated by the Contractor and with all applicable laws, ordinances, rules, regulations, and orders of any

public authority for the safety of persons or property in accordance with the requirements of the Contract Documents." This section may provide some guidance to the trier-of-fact on remand on the intent of the parties with respect to safety responsibilities on the job. However, we are satisfied that Section 11.11 is the only portion of the contract which creates a contractual right to indemnification. This section is quite specific and we conclude it was the only loss-shifting mechanism contemplated in the contract.

We remand for a plenary hearing. On remand, the trier-of-fact must, of course, first be satisfied of the reasonableness of the settlement under the circumstances. If the amount of the claim is reasonable, the fact-finder must then apportion the causative negligence between Remy and Gagliano; "to the extent" that Gagliano's negligence caused the plaintiff's injury, Gagliano must then reimburse Remy pursuant to Section 11.11 of the contract.

Reversed.