731 A.2d 523 (1999)
322 N.J. Super. 494
Ellen PINGARO and Ronald Pingaro, Plaintiffs-Respondents,
v.
Joseph ROSSI, Defendant-Third-Party Plaintiff/Respondent,
and
New Jersey Natural Gas Company, Third-Party Defendant/Appellant.
v.
Ellen PINGARO and Ronald Pingaro, Plaintiffs-Respondents/ Appellants,
v.
Joseph Rossi, Defendant-Third-Party Plaintiff/Appellant-Respondent,
and
New Jersey Natural Gas Company, Third-Party Defendant/Respondent.
Nos. A-1807-98T5[1], A-1813-98T5.
Superior Court of New Jersey, Appellate Division.
Submitted and Argued May 3, 1999.
Decided June 25, 1999.
*525 Keith T. Smith, Pleasantville, for Joseph Rossi (defendant-third-party plaintiff/appellant-respondent in A-1813-98T5 and defendant-third-party plaintiff/respondent in A-1807-98T5) (McAllister, Hyberg & White, Northfield, attorneys; Mr. Smith, on the brief).
Peter R. Connell, Manasquan, for New Jersey Natural Gas Company (third-party defendant/respondent in A-1813-98T5 and third-party defendant/appellant in A-1807-98T5) (Connell & Connell, attorneys; Timothy S. Kelsey, Wall, on the brief).
Ralph A. Paolone, for Ellen and Ronald Pingaro (plaintiffs-respondents in A-1807-98T5 and plaintiffs-respondents/appellants in A-1813-98T5) (Mr. Paolone, on the brief).
Before Judges HAVEY, SKILLMAN and LESEMANN.
*524 The opinion of the court was delivered by HAVEY, P.J.A.D.
A jury awarded $300,000 in damages to plaintiff Ellen Pingaro, a meter reader for defendant New Jersey Natural Gas Company (NJNG), for injuries she sustained as a result of a dog bite she suffered from a German Shepherd owned by defendant Joseph Rossi. By leave granted, plaintiff and NJNG appeal a post-verdict order granting a new trial as to liability. Rossi appeals from the denial of his motion for a new trial as to damages. The new trial order permits Rossi to argue plaintiff's comparative negligence by introducing evidence of her failure to heed NJNG's employee safety manual by not taking due care in attempting to read Rossi's meter when warned that a "bad dog" may be present. The order also permits Rossi to pursue a third-party claim against NJNG based on NJNG's negligence in failing to train plaintiff properly to avoid danger when confronted by a "bad dog."
We reverse. Under the so-called "dog bite" statute, N.J.S.A. 4:19-16, Rossi was strictly liable for plaintiff's injuries. There was no evidence adduced during trial supporting a finding that plaintiff incited Rossi's dog or voluntarily and unreasonably exposed herself to a known risk. There is therefore no basis in law to submit the issue of plaintiff's negligence to the jury. We also reverse the order submitting NJNG's negligence to the jury. Because NJNG is plaintiff's employer, it is not subject to the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5. Therefore, *526 Rossi may not seek contribution from NJNG. Finally, we reverse the order denying Rossi's motion for a new trial as to damages. The trial court erred in admitting into evidence the fact that Rossi's dog had bitten three other persons, including Rossi himself, prior to the dog bite suffered by plaintiff. The evidence was therefore irrelevant and had the clear capacity to inflame the jury in its deliberation on the issue of damages.
Plaintiff Ellen Pingaro filed a complaint against defendant Joseph Rossi alleging that she had been bitten by Rossi's dog on June 27, 1996, during the course of her employment as a meter reader for NJNG.[2] Rossi answered and filed a third-party complaint against NJNG alleging that NJNG breached an agreement with him that meter readers would not enter his backyard unless someone was home to secure his dogs. He requested indemnification for any judgment awarded to plaintiff. Prior to trial the trial court ruled that Rossi was strictly liable under the "dog bite" statute, N.J.S.A. 4:19-16. It also ruled that Rossi would not be permitted to introduce evidence of plaintiff's comparative negligence.
During trial plaintiff testified that on June 27, 1996, while performing her meter reading duties for NJNG, she was assigned a route in Beachwood, Ocean County. When she arrived at Rossi's house, her data cap, a hand-held computer, "beeped" a message: "[b]ad dog, knock." The data cap provides the meter reader with the name of the street and location of the meter and at times displays specialized messages pertaining to the customer, such as whether a "bad dog" may be present.
According to plaintiff, she had never been to Rossi's home before. She knocked on Rossi's door but received no answer. She proceeded to the fenced-in backyard, rattled the gate and her keys and yelled "gas company." There was no response.
She looked around the backyard for dogs or other animals. After satisfying herself that the yard was clear, she unhooked the gate and walked towards the meter. Immediately upon entering the back yard two dogs approached her. One dog, a large German Shepard, jumped up, knocked her down and bit her on both arms, legs and head. She subdued the dog by hitting it with her flashlight, exited the yard and called for help. A nearby construction worker summoned an ambulance which took her to Community Medical Center where she received numerous stitches and was released later that afternoon.
Plaintiff was out of work for approximately six weeks. She was unable to engage in her normal activities for about one month. She treated with both a chiropractor and a physical therapist following the attack, the former for about six to eight months, and the latter for approximately four months.
The attack did not result in any long term physical disabilities, outside of some permanent scarring on her arms and one scar on her leg. However, plaintiff has suffered anxiety, fear and depression related to the incident. She saw a therapist on one occasion. Plaintiff filed for and received workers' compensation benefits for her disability arising from her injuries.
Rossi testified that the dog which attacked plaintiff was kept fenced in his backyard. The only gate to the backyard was the gate utilized by plaintiff in entering the yard. He stated that a large "Beware of Dog" sign was posted on the gate.
According to Rossi, over the course of ten years he had spoken with several meter readers about his dog and told them they should not enter his yard if no one was home. The meter readers responded that they would comply with his request. Rossi noted that this arrangement had worked for over ten years, and when he *527 was not at home the meter readers would estimate his bill, leave a card for him to mail in or come back at a later date.
Counsel for NJNG questioned Rossi about whether he had ever told NJNG that his dog had bitten people in the past. Rossi's counsel objected, arguing that the question was irrelevant because Rossi's liability had been established as a matter of law. Counsel for NJNG argued that the question was probative of the existence of the purported agreement between Rossi and NJNG. After the objection was overruled, Rossi admitted that his dog had previously bitten his sister-in-law, nephew and himself. He also admitted that he had not notified anyone at NJNG about the prior bites. After the dog's bite history was elicited by counsel for NJNG, plaintiff's counsel questioned Rossi extensively about the three previous occasions his dog had bitten people.
Thomas Waldron, an NJNG meter reader who had serviced Rossi's residence prior to plaintiff's injuries, confirmed that he had spoken with Rossi about his dog, and had accommodated his request that he not enter the yard if no one was home. However, he denied that he had entered into a formal agreement with Rossi. According to Waldron, while reading Rossi's meter on one occasion, Rossi's dog chased him and "[i]t appeared that the dog wanted to kill me."
The jury returned a verdict in favor of plaintiff in the amount of $300,000, and $2,000 to her husband on his per quod claim. It also found that Rossi had sustained his burden of proving that NJNG "is responsible, in whole or in part, for the incident on the basis of a contractual obligation." The jury apportioned fault sixty-five percent and thirty-five percent against Rossi and NJNG respectively.
Rossi filed a motion for judgment notwithstanding the verdict or alternatively for a new trial. The trial court denied Rossi's request for a new trial as to damages, but granted a new trial as to liability. It concluded that Rossi should have been permitted to introduce evidence of plaintiff's comparative negligence. The court further ruled that a new trial was necessary to assess the comparative negligence of NJNG based on its negligent failure to train or instruct plaintiff on how to respond when confronted by a "bad dog."

I
Plaintiff argues that the trial court erred in granting a new trial as to liability for the jury to consider plaintiff's conduct as a basis for comparative negligence.
The so-called "dog bite" statute, N.J.S.A. 4:19-16, reads in pertinent part:
The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.
There is no question that plaintiff fulfilled the three elements necessary to establish Rossi's liability under the statute. Rossi was the owner of the dog, the dog bit plaintiff and the bite occurred while plaintiff was lawfully on Rossi's property. DeRobertis v. Randazzo, 94 N.J. 144, 151, 462 A.2d 1260 (1983). Satisfaction of the elements of the statute imposes strict liability upon Rossi for damages sustained by plaintiff. Jannuzzelli v. Wilkens, 158 N.J.Super. 36, 39, 385 A.2d 322 (App.Div. 1978); Tanga v. Tanga, 94 N.J.Super. 5, 12, 226 A.2d 723 (App.Div. 1967). The trial court made a pretrial ruling that plaintiff's comparative negligence was not an issue. The court therefore excluded any evidence concerning plaintiff's conduct prior to and at the time of the dog bite. However, as noted, the court reversed itself after trial, concluding that a new trial on liability was necessary in order to permit Rossi to produce evidence of plaintiff's alleged deviation from NJNG's safety policies and procedures *528 by attempting to read the meter knowing that a "bad dog" may be present.
Even before adoption of the comparative negligence statute, N.J.S.A. 2A:15-5.1 to -5.3, we held that contributory negligence may bar recovery under the "dog bite" statute. Foy v. Dayko, 82 N.J.Super. 8, 13, 196 A.2d 535 (App.Div.), certif. denied, 41 N.J. 602, 198 A.2d 446 (1964). In Foy, we observed that "we are not persuaded that the Legislature intended ... to make an owner liable for injuries by dog bite where the injured person's own careless or provocative conduct was a contributory causal factor in the mischance." Ibid. (emphasis added). In Foy, plaintiff was prevented from entering a tavern with his own dog. He confronted the tavern owner's dog and began making "grr, grr, grr" sounds and aggravated the dog by making motions. Id. at 10, 196 A.2d 535. When the two dogs began fighting, plaintiff attempted to separate them and he was scratched in the process. Ibid. We observed:
[T]he patent indefensibility of allowing a person who provokes an animal into attacking him from recovery of damages from its owner has led practically all courts which have considered the question to allow such a defense as against a statutory cause of action not expressly mentioning it.

[Id. at 13, 196 A.2d 535.]
Aside from provocation, the "careless" conduct found by the court justifying consideration of the contributory negligence issue was plaintiff's voluntary exposure to a known risk by getting between the two fighting dogs resulting in his injury. Id. at 14, 196 A.2d 535.
The Court in DeRobertis, supra, 94 N.J. at 144, 462 A.2d 1260, held that, in the context of absolute liability (where the owner has knowledge of the vicious propensity of his dog), plaintiff's contributory negligence is available to the dog owner under the Comparative Negligence Act. Id. at 156, 462 A.2d 1260. The Court adopted the rationale of the strict product liability cases which hold that to establish that plaintiff's contributory negligence is a contributing proximate cause of his injury, "defendant must show that the plaintiff with actual acknowledge of the danger posed by the defective product voluntarily and unreasonably encountered that risk." Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 562-63, 410 A.2d 674 (1980); Cf. Cepeda v. Cumberland Eng'g Co., Inc., 76 N.J. 152, 185, 386 A.2d 816 (1978) (holding that "contributory negligence in the sense of mere carelessness or inadvertence" is not a defense in strict liability cases),overruled in part on other grounds, Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 177, 406 A.2d 140 (1979). In Budai v. Teague, 212 N.J.Super. 522, 525, 515 A.2d 822 (Law Div.1986), the Law Division held that the DeRobertis rule, although addressing "absolute liability" cases, should apply as well to strict liability claims under the "dog-bite" statute. The court held that for contributory negligence to be presented to the jury, defendant must show that "plaintiff knew the dog had a propensity to bite either because of the dog's known viciousness or because of the plaintiff's deliberate acts intended to incite the animal." Ibid.
The DeRobertis rationale is consistent with Dean Prosser's treatment of contributory negligence in the dog-bite setting. He states:
Thus, a plaintiff who is injured by the defendant's dangerous animal is not barred from recovery by his own lack of ordinary care in failing to discover its presence, or in inadvertently coming in contact with it.
[Prosser & Keeton on Torts § 79 at 565 (5th ed.1984).]
However:
a plaintiff who voluntarily and unreasonably comes within reach of an animal which he knows to be dangerous, or intentionally irritates or provokes it, has no cause of action when it attacks him.

[Id. at 566.] *529 In our view, application of this comparative negligence model to the "dog-bite" statute is compatible with its application in other strict liability settings and underscores the purpose of the statute: that "owners should as the social price of keeping [dogs] compensate those innocently sustaining injury in that fashion." Tanga, supra, 94 N.J.Super. at 14, 226 A.2d 723.
Here, it is conceded that plaintiff did not provoke Rossi's dog. Further, plaintiff hardly entered the yard knowing that the "bad dog" was present and voluntarily exposed herself to the danger of being attacked by it. She did not deliberately and unreasonably encounter the dog, knowing that it was dangerous. Although she had been alerted that a "bad dog" may be present, when she arrived at the Rossi residence she saw no signs of the dog. She knocked on the door, rattled the gate and her keys and shouted "gas company." Only when there was no evidence of the presence of the "bad dog" did she enter the yard where she was suddenly attacked by it. That "encounter" was hardly deliberate or voluntary.
The trial court was of the view that plaintiff's failure to heed NJNG's safety manual and policies pertaining to meter readers' exposure to dogs justified the presentation of plaintiff's negligence to the jury on retrial. According to Rossi, he was prepared to demonstrate that NJNG's manual warned meter readers to look for signs that an animal is present and "don't go into yards ... until you're sure all pets have been properly restrained." Further, an NJNG's supervisor had testified in deposition that, in the presence of a "Beware of Dog" sign on the gate and plaintiff's knowledge of the presence of a "bad dog," her entry into the yard was not a "safe procedure." However, even assuming a violation of NJNG's safety policies, that violation would constitute a "lack of ordinary care in failing to discover" the presence of the dog, Prosser & Keeton on Torts, supra, at § 79 at 565, rather than a voluntary exposure to a known risk.

II Rossi argues that the trial court's error in admitting into evidence prior incidents involving the dog "prejudiced the jury so as to taint the [damage] verdict." We agree.
As noted, the trial court permitted evidence that prior to plaintiff's injuries, Rossi's dog had bitten Rossi's sister-in-law, nephew, and had even bitten Rossi himself, requiring twenty-seven stitches to the arm.
In order for plaintiff to prevail under the "dog-bite" statute, she need not prove scienter; that is, that Rossi knew of the dog's dangerous propensities. See DeRobertis, 94 N.J. at 151, 462 A.2d 1260 (holding that under the dog-bite statute, "even owners without scienter" become liable upon satisfaction of the statutory elements); see also Nicholes v. Lorenz, 396 Mich. 53, 237 N.W.2d 468, 472 (1976) (holding that one who brings action under a "dog-bite" statute is not required to establish dog's past conduct or owners knowledge thereof). Therefore, evidence of the dog bites suffered by three other persons was entirely irrelevant.
The trial court admitted the evidence on the basis that it was relevant to the purported agreement between Rossi and NJNG that meter readers would not enter the premises if Rossi was not at home. The court reasoned that Rossi's failure to report these prior incidents to NJNG cast doubt upon the existence of such an agreement. However, the relevance of the three prior dog bites suffered by individuals unrelated to NJNG was marginal at best, and its questionable probative value was substantially outweighed by the risk of prejudice to Rossi. N.J.R.E. 403(a). Under N.J.R.E. 403, the "more attenuated and the less probative the evidence, the more appropriate it is for a judge to exclude it...." State v. Medina, 201 N.J.Super. 565, 580, 493 A.2d 623 (App.Div.), certif. denied, 102 N.J. 298, 508 A.2d 185 (1985).
*530 The prejudice to Rossi was substantial. After the jury was told about the three prior bites, plaintiff's counsel on cross-examination focused on the evidence and asked Rossi whether his dog was "trained to attack." He also asked whether, when the dog bit Rossi's sister-in-law, she was "simply walking in the backyard" and whether he had told NJNG that his ten-year old nephew had been "attacked" by the dog, or that defendant's own injuries from his bite required "twenty-seven stitches." The prejudice to Rossi was enhanced by plaintiff's counsel's summation, when he argued:
An apology? Maybe you should have apologized when your sister-in-law Christine got attacked by this dog in 1986. And maybe you should have then made an arrangement with New Jersey Natural Gas Company to move the meter. But, I can understand. That's [one, one] attack. Then 7 months later when a 10 year old boy gets attacked walking in the backyard, you might want to do something else. You certainly might want to then contact New Jersey Natural Gas.
But maybe, you know, use your common sense. That's probably not on your mind when someone gets attacked by a dog. "Well, let me go call the gas company and the Bell Atlantic and, and the electric company in case they come." No. But when Tom Waldron of the gas company gets attacked, and as he said, "Boy, I almost got killed. If that dog had gotten between me and the gate (whiff sound). It's over for me." When that happens and he clearly discussed that with Mr. Rossi, that's the time. "Boy, okay. We've got to end it now. A 10 year old person. My sister-in-law and you? Okay. Let's do something. Let's move the meter."
What more could he have done? How about that? Then when you get bit yourself and you take 27 stitches, well, it maybe time to do something with the dog. Ellen had no idea when she walked into that gate what was going to confront her. The dog had a habit of laying in wait. Not making a sound until you got in. And fortunately for Tom Waldron he got out. Unfortunately for Ellen Pingaro, she didn't. That's why we're here.

[Emphasis added.]
In our view, this argument was intended to submerge the issues of liability and focus on punishing Rossi for the dog's prior conduct. The evidence and argument had the clear capacity to inflame the jury's emotions based on Rossi's inaction in the face of the dog's dangerous propensities in its deliberation of the damage issue. The harm of prejudice was accentuated by virtue of the fact that the trial court failed to give any limiting instruction on the manner by which the jury should use the evidence of the dog's prior conduct. DeMary v. Rieker, 302 N.J.Super. 208, 218, 695 A.2d 294 (App.Div.1997). We therefore reverse the order denying Rossi's motion for a new trial on damages and remand for further proceedings.

III
Rossi argues that the trial court improperly submitted his demand for indemnification against NJNG to the jury.
The trial court submitted to the jury the question whether Rossi "sustained the burden of proving that [NJNG] was responsible in whole or in part for the incident on the basis of a contractual obligation." The "contractual obligation" was Rossi's claim that NJNG agreed not to permit meter readers on his premises when he was not at home. The jury found in favor of Rossi on this point and, as noted, apportioned fault against Rossi and NJNG in the amount of sixty-five percent and thirty-five percent respectively. The court set aside this aspect of the verdict, concluding that "notice from [Rossi to NJNG] did not rise to the level of indemnification for this action. I'm ruling that as a matter of law that the fact that [Rossi] notified the company [of the danger of his dog] does not *531 make [NJNG] insurers for [Rossi]." Nevertheless, the court resubmitted the liability of NJNG to the jury as part of the new trial because of evidence that NJNG may have been negligent in failing to train plaintiff as to the means of preventing injury to herself when confronted with a "bad dog."
Rossi now argues that his demand for indemnification should have been decided by the trial court "as an all or nothing proposition" and, in any event, since the jury found that NJNG breached the agreement, he should be fully indemnified by NJNG for the jury verdict. NJNG argues that its comparative fault should not have been submitted to the jury.
Before we address Rossi's argument, we reverse the new trial order submitting the question of NJNG's "negligence" to the jury. Plaintiff is an employee of NJNG and was injured while in the course of that employment. She recovered workers' compensation benefits for the injury. Therefore, her rights and the rights and duties of NJNG and Rossi as "a third-party tortfeasor, are governed by the Workers' Compensation Act, N.J.S.A. 34:15-1 to-127." Ramos v. Browning Ferris Indus. of South Jersey, Inc., 103 N.J. 177, 183, 510 A.2d 1152 (1986). Rossi, as a third-party tortfeasor, may not obtain contribution from NJNG no matter what may be its comparative negligence, because NJNG cannot be a joint tortfeasor under New Jersey's Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5. Accord Stephenson v. R.A. Jones & Co., Inc., 103 N.J. 194, 199, 510 A.2d 1161 (1986); Ruvolo v. United States Steel Corp., 139 N.J.Super. 578, 583, 354 A.2d 685 (Law Div.1976). Since NJNG is not a joint tortfeasor, it is not subject to contributory liability under the Comparative Negligence Act. N.J.S.A. 2A:15-1 to -5.8. See Stephenson, supra, 103 N.J. at 199, 510 A.2d 1161.
Rossi seeks 100% recovery against NJNG based on implied or express indemnification derived from his so-called agreement with NJNG. Generally, a third party "may recover on a theory of implied indemnity from an employer only when a special legal relationship exists between the employer and the third party, and the liability of the third party is vicarious." Ramos, supra, 103 N.J. at 188-89, 510 A.2d 1152 (citing Arcell v. Ashland Chem. Co., Inc., 152 N.J.Super. 471, 488-89, 378 A.2d 53 (Law Div.1977)). Examples of such a "special relationship" include that of principal and agent, bailor and bailee, and lessor and lessee. Ramos, supra, 103 N.J. at 189, 510 A.2d 1152.
No special relationship existed between Rossi and NJNG. At most, some of NJNG's meter readers had agreed not to read Rossi's meter when he was not home because of the danger posed by Rossi's dog. Also, Rossi's liability was not vicarious. He was found strictly liable for plaintiff's injuries because his dog bit plaintiff who was lawfully on his premises.
Further, as a general rule, a party who is at fault cannot obtain indemnification for its own acts. Cartel Capital Corp., supra, 81 N.J. at 566, 410 A.2d 674. The jury found that Rossi was sixty-five percent at fault. However, a party "who in good faith and at the direction of another commits a tort is allowed indemnity against the person who caused him to act." Ramos, supra, 103 N.J. at 190, 510 A.2d 1152. This exception is inapplicable because, when Rossi's dog bit plaintiff, he was not following NJNG's directions. In short, Rossi has no claim based on a theory of implied indemnification.
The Workers' Compensation Act does not bar an employer from assuming a contractual duty to indemnify a third party through an express agreement. Ramos, supra, 103 N.J. at 191, 510 A.2d 1152. Such an express indemnification contract "`is to be construed in accordance with the rules for the construction of contracts generally....'" Mautz v. J.P. Patti Co., 298 N.J.Super. 13, 19, 688 A.2d *532 1088 (App.Div.), certif. denied, 151 N.J. 472, 700 A.2d 883 (1997) (quoting Doloughty v. Blanchard Const. Co., 139 N.J.Super. 110, 116, 352 A.2d 613 (Law Div.1976)). In ascertaining the intention of the parties, we must consider the "`surrounding circumstances and the objects sought to be attained by the parties under their agreement.'" Ibid. Further, when the agreement is ambiguous, it is to be strictly construed against the indemnitee. Ramos, supra, 103 N.J. at 191, 510 A.2d 1152.
Rossi fails to demonstrate that NJNG had a duty to indemnify as a result of an express agreement. Initially, we note that nothing in the record even suggests that NJNG, a public utility having the power to enter a customer's yard for the purpose of reading meters,[3] gave past meter readers actual authority to bind the utility to an agreement that all NJNG meter readers would provide such an accommodation in the future. See Sears Mortgage Corp. v. Rose, 134 N.J. 326, 337, 634 A.2d 74 (1993). Nor can it be said that the past meter readers had the apparent authority to bind NJNG to such an agreement. See Lampley v. Davis Mach. Corp., 219 N.J.Super. 540, 548, 530 A.2d 1254 (App.Div.1987) (stating that "[a]pparent authority arises when a principal acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or may not possess").
In any event, the "object[ ] sought to be attained," Mautz, supra, 298 N.J.Super. at 19, 688 A.2d 1088, was hardly an expression by NJNG to make itself an insurer of Rossi for injuries sustained by persons lawfully on his premises as a result of attacks by his dog. The meter readers' purported promise not to read the meter if Rossi was not at home was to accommodate him, not an agreement to hold him harmless in the event his dog bit an NJNG employee.
Reversed and remanded for a new trial on damages.
NOTES
[1] These are back-to-back appeals which we hereby consolidate for the purpose of this opinion.
[2] Plaintiff Ronald Pingaro asserts a per quod claim. For ease of reference we will refer to plaintiff, Ellen Pingaro, as plaintiff.
[3] According to NJNG's counsel, NJNG's tariff provides that meter readers "shall have free access to the Customer's premises at all reasonable times for the purpose of reading meters...."