821 A.2d 527 (2003)
360 N.J. Super. 69
Lois ZUKOWITZ, Plaintiff-Appellant,
v.
Howard HALPERIN and Penn Tudor Associates, L.P., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted February 20, 2003.
Decided May 5, 2003.
*528 Forman, Cardonsky, Andril & Eiges, Elizabeth, for appellant (Mark C.G. Lawrence, on the brief).
Law Offices of Anthony W. Guidice, Lawrenceville, for respondents (Francis A. Nemazie, on the brief).
Before Judges KING, WECKER and LISA.
The opinion of the court was delivered by WECKER, J.A.D.
This is a dog bite case. Plaintiff, Lois Zukowitz, appeals from summary judgment dismissing her complaint against her landlord, defendants Howard Halperin and Penn Tudor Associates, L.P.[1] Plaintiff was bitten by the building superintendents' dog, who ran out of the superintendents' apartment when plaintiff knocked on the door to report a leak in her apartment. We affirm in part and reverse in part.
Most of the relevant and material facts are undisputed. Plaintiff was a tenant in a third-floor apartment at 421 Pennington Street in Elizabeth. The building was owned by Penn Tudor Associates. It consisted of twenty-eight apartments on four floors, with an additional apartment in the basement. Halperin, as the managing partner, was responsible for hiring and supervising the building's superintendents, Patricia and William Thoraldson. According to Halperin, the Thoraldsons were responsible for receiving the tenants' rent and repair requests, doing minor maintenance, and keeping the building clean and safe for tenants. They were paid no salary but as compensation for their services they were permitted to occupy the two-bedroom apartment in the basement. They were also paid for services "above and beyond." Tenants were instructed that they could pay rent or make complaints by knocking on the superintendents' apartment door.
Leases issued by defendant prohibited tenants from having pets in their apartments. About six months prior to the incident at issue, when Halperin became *529 aware that the Thoraldsons had a dog, he initially told them, "I'm really not happy with the dog here and I'd like it gone." When the Thoraldsons did not act on that request, Halperin again asked them to remove the animal. They told him they were concerned for their safety and that of their children because their apartment was at ground level, and they wanted the dog as protection against intruders. Halperin relented, but as he testified in depositions, he specifically instructed the Thoraldsons that the dog "is not to be let out.... It could go out the back door, the backyard with it on the leash, but it could not go in the hallways it could not go out." (emphasis added). Halperin had been in the superintendents' apartment when the dog was present and found it playful, not aggressive.
In the early evening of December 30, 1998, Zukowitz went to the Thoraldsons' basement apartment to speak with William Thoraldson, in his capacity as superintendent, about a leak in her apartment. She knocked on the door, and a voice from the apartment asked, "Who is it?" She replied "Lois," and the door was opened.
There are different versions as to whether it was Patricia Thoraldson or a visitor who actually opened the door to plaintiff, but we find that difference immaterial. Mrs. Thoraldson apparently told Halperin that she opened the door, talked to Zukowitz, and when she went inside to get something, the dog ran out and bit Zukowitz. Zukowitz says that a friend of the Thoraldsons opened the door "real wide," and then the dog ran out and grabbed her leg. Either way, there is no dispute that Zukowitz knocked on the door to make a complaint to the superintendent, and when the door was opened to receive her, the unconfined dog was able to escape the apartment, enter the hallway unleashed, and attack Zukowitz.
Plaintiff's complaint against the landlord included count one, negligence in allowing a dog on the premises; count two, "strict liability" and negligence respecting the dog "under [its] control"; count three, vicarious strict liability and negligence "through their agents, servants and/or employees"; and count four, negligent hiring and supervision of an employee.[2] Initially, we note that N.J.S.A. 4:19-16 provides:
"The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness."
The statute is clearly inapplicable to establish direct liability of the landlord in this case because it is not the dog's owner. See DeRobertis by DeRobertis v. Randazzo, 94 N.J. 144, 158, 462 A.2d 1260 (1983) (ownership is an essential element of strict liability under the statute). The superintendents were not named as defendants, and on appeal plaintiff has not pursued her vicarious strict liability claim against defendant. We therefore do not address the question whether strict liability imposed by law against a dog owner can form the *530 basis for imposing vicarious liability on the dog owner's employer, and we affirm summary judgment dismissing plaintiff's strict liability claims.
Defendant moved for summary judgment, relying on Hyun Na Seo v. Yozgadlian, 320 N.J.Super. 68, 726 A.2d 972 (App. Div.1999). In that case, the plaintiff was a tenant in a two-family house. The dog's owner lived rent-free in the basement, in exchange for performing maintenance services for the owner. We found that the dog owner was a tenant, and we held that "a lease provision prohibiting tenants from keeping pets [does not] make[ ] a landlord responsible for injury caused by a dog kept in violation of that provision...." Id. at 72, 726 A.2d 972. We also held that under common law negligence principles, a landlord cannot be directly liable for injury caused by a tenant's dog "in the absence of proof of the dog's vicious propensities." Ibid.
In this case, the motion judge granted summary judgment on the basis of Hyun Na Seo, finding plaintiff "unable to cite to any fact ... which would refute Halperin's claim that he had no knowledge of the dog's propensity [and] unable to cite any law that would impute ... constructive knowledge [of the dog's propensity] upon defendants as landlords."
Hyun Na Seo is distinguishable and does not govern on the facts before us because the Thoraldsons unquestionably were defendant's employees and not merely tenants. If the dog's owner had been merely a tenant, the landlord would not be liable unless he had knowledge of the dog's aggressive propensities. But it is unnecessary for plaintiff to prove defendant's knowledge of the dog's propensity as a basis for imposing common law vicarious liability for the employed superintendents' negligence.
The judge also made the following rulings:
Plaintiff also opposes this motion claiming negligent control on the part of the dog's owner. Based upon this negligence, plaintiff argues that defendants can be held vicariously liable under the doctrine of respondeat superior. First, it's important to note that the dog's owner, the superintendents, Mr. And Mrs. Thoraldson, are not named in this suit. Therefore, their alleged negligence is not an issue in this case.
....
To claim that the Thoraldsons were acting within the scope of their employment by having the door to their apartment opened by a visitor, I assume, is a leap that is unsupported by any case law cited by the plaintiff.
The judge erred in dismissing plaintiff's common law claim based upon vicarious liability for the negligence of defendant's employees. See, e.g., Printing MartMorristown v. Sharp Elecs. Corp., 116 N.J. 739, 771, 563 A.2d 31 (1989). Whether the Thoraldsons were named as defendants is legally irrelevant to defendant's liability for their conduct under the doctrine of respondeat superior. See McFadden v. Turner, 159 N.J.Super. 360, 388 A.2d 244 (App.Div.1978).
[T]his court, in Moss v. Jones, 93 N.J.Super. 179, 225 A.2d 369 (App.Div. 1966), has heretofore held that when a plaintiff has a cause of action against two possible defendants, namely the negligent actor and the person vicariously liable for the negligent conduct, he need not join both in a single action but has the option of suing them separately in successive actions. The rationale permitting successive litigation is that although the act of negligence complained of is the same in each action, there are nevertheless two distinct and separate persons responsible to the plaintiff, the actual tortfeasor himself and the person vicariously liable for the tort. Thus a *531 plaintiff has two separate causes of action which he may prosecute separately, there being "nothing mandatory as to joinder, when liability is several or joint and several." Moss v. Jones, supra.

[Id. at 364, 388 A.2d 244.]
Of course, the plaintiff is permitted only one full recovery and "will be precluded from relitigating the identical factual issue in the second suit by reason of res adjudicata /collateral estoppel considerations." Id. at 365, 388 A.2d 244.[3]See also Rieser v. District of Columbia, 563 F.2d 462, 469 n. 39 (D.C.Cir.1977) (employee is not a necessary party to a suit against the employer on a theory of respondeat superior), modified en banc on other grounds, 580 F.2d 647 (D.C.Cir.1978).
There can be no dispute that the superintendents were acting within the scope of their employment when they accepted tenant complaints, including Zukowitz's reported leak, at the door to their basement apartment. Whether they were negligent in allowing their dog to escape through the apartment door, under all the circumstances, is plainly a jury question.
Plaintiff has cited nothing in the record to support her allegation on appeal that defendant "had knowledge of the dog's vicious propensities." Plaintiff's only other argument on appeal relates to defendant's alleged vicarious liability for the superintendents' negligence. We reverse summary judgment dismissing plaintiff's vicarious liability claim, and affirm the judgment in all other respects.
Affirmed in part and reversed in part and remanded for further proceedings.
NOTES
[1] Penn Tudor Associates, L.P., is a limited partnership, and Howard Halperin is the managing partner. For convenience, we refer to "defendant" in the singular in this opinion to include both Halperin and the partnership.
[2] The complaint is somewhat inartfully drafted, in that it alleges both strict liability and negligence "through [defendants'] agents, servants and/or employees," without explicitly alleging vicarious liability for the superintendents' negligence. We are satisfied, however, that the parties and the judge assumed that plaintiff's complaint included such a claim. Indeed, plaintiff's first point heading on this appeal is "LANDLORD IS VICARIOUSLY LIABLE BECAUSE THE DOG'S OWNERS WERE EMPLOYEES OF LANDLORD AND WERE WITHIN THE SCOPE OF THEIR EMPLOYMENT WHEN THEY NEGLIGENTLY ALLOWED THE DOG TO ESCAPE."
[3] Because we are not here concerned with a second suit, we need not consider the potential preclusive effect of the entire controversy doctrine as it has developed since McFadden. See R. 4:30A and Pressler, Current N.J. Court Rules, Comment 1 on R. 4:30A (2003).