**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0663-18T1

ALIESETTE RUSSO and
ANTHONY RUSSO, her
husband,

      Plaintiffs-Respondents,

v.

CREATIONS BY STEFANO,
INC. and STEFANO SIMONE,

      Defendants-Respondents,

and

PLATINUM REALTY GROUP,

      Defendant-Appellant.

_____

          Argued telephonically March 23, 2020 –
          Decided August 20, 2020

          Before Judges Ostrer, Vernoia and Susswein.

          On appeal from the Superior Court of New Jersey, Law
          Division, Hudson County, Docket No. L-1757-16.

          William Pfister, Jr. argued the cause for appellant.

Christian C. Lo Piano argued the cause for respondents Aliesette Russo and Anthony Russo (LoPiano Kenny & Stinson, attorneys; Christian C. Lo Piano, on the brief).

PER CURIAM

In this dog bite case, defendant Platinum Realty Group, LLC (Realty), appeals from the trial court's grant of partial summary judgment on liability in favor of plaintiff Aliesette Russo (Russo), and the denial of its own cross-motion to dismiss. A dog that Stefano Simone (Simone) owned bit Russo while she was in Simone's jewelry store, Creations by Stefano, Inc. (Creations). The store was located in a one-floor building Realty owned. As Simone was Realty's managing member, the trial court held it was vicariously liable for Russo's damages. After a damages-only trial, a jury awarded Russo $107,500.

We conclude there exists, on the record before us, a genuine issue of material fact as to whether Simone was acting as Realty's agent when the dog bit Russo. Therefore, we reverse partial summary judgment on liability, but affirm the order denying Realty's motion to dismiss.

I.

Regarding Realty's appeal from the order granting Russo partial summary judgment, we view the facts in a light most favorable to defendant Realty as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540

(1995). However, regarding Realty's cross-motion to dismiss the complaint, we extend to Russo "every reasonable inference of fact." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).[1]

The parties do not dispute that Russo arrived at the jewelry store at around 5:00 p.m. on May 2, 2014. She rang the doorbell. Simone was in the back of the store, preparing to close for the day. But two employees were up front.

Realty admitted that Russo was lawfully on the premises with its permission. As reflected in a video-recording of the incident, Russo immediately approached "Contessa," a Rottweiler that stood on its hind legs, with his front paws on a low door that separated the public sales floor from the employees' area behind the counter and showcases. Contessa's head extended into the public area. Russo was a repeat customer and had pet the dog before. In the past, store employees provided customers with treats to give to the dog. The parties dispute whether one of the employees suggested that Russo refrain

---

[1] Even if we deemed Realty's cross-motion as one for summary judgment, Russo's motion did not waive her right to contest Realty's assertions in support of its cross-motion. See O'Keeffe v. Snyder, 83 N.J. 478, 487 (1980) (stating that cross-motions for summary judgment do not constitute a waiver of factual disputes as "a party may make concessions for the purposes of [her] motion that do not carry over and support the motion of [her] adversary").

from petting Contessa, because she was barking or was excited.[2] Russo extended her open right hand and Contessa bit it.

Simone owned the dog. It was licensed to him at the business address. One employee testified that the dog remained at the business location when the store was closed.[3] Simone was the sole shareholder of Creations, which operated the jewelry store.

---

[2] Employee Antonio Saavedra testified in deposition that his co-employee Marietta Bosca "clearly said to [Russo], I don't think it is a good idea to pet [Contessa] because she is barking. I don't remember if she said barking or excited but she clearly sa[id] that. And she [Russo] — and her answer was no, no, no, the dog like[s] me." By contrast, Russo alleged the dog bit her "without warning."

[3] Russo alleged in her statement of material facts that the dog was licensed at the business address. She relied on a dog license that was issued in 2015. Although it post-dated the incident, it sufficed as circumstantial evidence that the dog lived at the business premises in 2014, particularly since the record also includes a certification of a 2013 rabies vaccination, which listed the business address for the owner and the dog. Realty denied the statement that the dog was licensed to the business address without citing competent evidence, such as Simone's sworn statement or a certified copy of a previous license. See R. 4:46-2(b). Rather, Realty stated, "Upon information and belief, the dog was register[ed] on May 2, 2014 at Mr. Simone's residence." That statement was insufficient to deny Russo's assertion. See Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 454-55 (App. Div. 1998) (stating that "factual assertions based merely upon 'information and belief' are patently inadequate" to present admissible evidence on a motion). Therefore, we deem Russo's statement regarding the dog's residence to be undisputed. R. 4:46-2(b).

A-0663-18T1

Simone was also the managing member of Realty. Evidently, he was not the sole member. A March 2018 status report states that Yuneiry Gonzalez-Simone was also a member of the LLC.

Simone admitted that Realty "owned, operated and controlled" the building. Realty contended that Creations was a "tenant in possession," but admitted that there was no lease between Realty and Creations, and provided no other competent evidence, such as proof of rent payment, to prove a landlord-tenant relationship between the two entities.

On April 29, 2016, Russo filed her complaint against Simone, Creations, and Realty.[4] She asserted a claim under the so-called Dog Bite Statute, N.J.S.A. 4:19-16 (Statute). In support of common law claims, she also asserted that Simone and Creations knew or should have known the dog had vicious propensities, and they negligently failed to protect Russo from danger. She also alleged Simone and Creations engaged in reckless, willful and wanton behavior. Realty denied liability.[5]

---

[4] Russo's husband was a co-plaintiff on a per quod claim. The jury entered a no cause judgment on his claim.

[5] We do not address Simone's and Creations' respective responses as they are not parties to the appeal.

A-0663-18T1

After a period of discovery, Russo filed her motion for partial summary judgment. She sought a finding that Simone was strictly liable under the Statute, and Realty and Creations were vicariously liable.[6] Realty evidently filed a cross-motion to dismiss the complaint against it.[7]

Russo argued that Simone was strictly liable under the Statute because he owned the dog; Russo was lawfully on the premises; and the dog bit Russo. She argued that Realty was vicariously liable on the basis that Simone was the LLC's managing member, and he was on the premises in that role, as well as in his individual capacity and as Creations' sole shareholder. In support of her vicarious liability argument, Russo relied on Zukowitz v. Halperin, 360 N.J. Super. 69 (App. Div. 2003), which we discuss below.

In the course of oral argument, Russo's counsel effectively abandoned her common law absolute liability claim by conceding that Contessa had no "vicious

---

[6] The trial court had previously denied Russo's application for such a finding in the form of a motion in limine, concluding it should be presented as a summary judgment motion.

[7] Realty now characterizes its cross-motion as one for summary judgment. However, Realty's proposed form of order described the motion as one for dismissal. Furthermore, Realty has not provided a "statement of all items submitted to the court on the summary judgment motion," nor has it included such items in the appendix, as Rule 2:6-1(a)(1) requires. The record only includes Russo's statement of material facts in support of her motion for partial summary judgment of liability, and Realty's response.

A-0663-18T1

propensities." See DeRobertis v. Randazzo, 94 N.J. 144, 153 (1983) (stating that to impose absolute liability at common law, a plaintiff had to prove knowledge or reason to know of a dog's vicious propensities). However, Russo did not abandon her separate negligence-based claim. See id. at 156, 158 (distinguishing between common law claim for absolute liability based on a knowledge of vicious propensities, and negligence-based claim).

In opposing the motion, Realty argued that Russo did not satisfy the Statute because she was not lawfully in the area where she was bitten, once she was allegedly warned not to go near the dog. Assuming liability under the Statute, Realty argued that Simone, and at most, Creations were liable. Realty noted there was no employment relationship between Realty and Simone, and the LLC's mere ownership of the building was insufficient to render it vicariously liable. Realty argued that when the bite occurred, Simone was engaged in furthering the business purpose of the jewelry store, not the property owner. Realty argued that it was entitled to dismissal of the complaint on the same grounds.

The court found Simone, Creations, and Realty strictly liable. In a terse statement of reasons appended to its order granting partial summary judgment, the trial court stated:

A-0663-18T1

> Defendant Simone is [s]trictly [l]iable . . . . Further, Creations by Stefano, Inc. and Platinum Realty Group [are] found vicariously liable. In <u>Zukowitz v. Halper[i]n</u>, 360 N.J. Super. 69 (App. Div. 2003), the dog bite statute was inapplicable to establish direct liability on the [d]efendant [l]andlord as the [d]efendant [l]andlord did not own the dog that bit [p]laintiff. Here, [d]efendant [l]landlord owns the dog. The dog owner was the managing member.

The court included the same reasoning in its order denying Realty's cross-motion to dismiss, adding that the dog was registered at the business location, where the bite occurred.

In the subsequent trial on damages, the jury awarded Russo $107,500, and the court entered judgment for $113,430.32, including $5,930.32 in pre-judgment interest. This appeal followed.[8]

## II.

We review de novo the grant of partial summary judgment, and apply the same standard as the trial court. <u>Henry v. N.J. Dep't of Human Servs.</u>, 204 N.J. 320, 330 (2010). We review the motion record to determine if there are genuine issues of fact that would prevent granting judgment as a matter of law. <u>Brill</u>, 142 N.J. at 540; <u>R.</u> 4:46–2(c). We also review de novo the trial court's denial of

---

[8]  Russo cross-appealed, seeking a new trial on damages, based on various evidentiary and trial errors. However, after oral argument, she filed a stipulation dismissing the cross-appeal.

Realty's motion to dismiss. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 108 (2019).

At the outset, we reject Realty's contention that there were disputed issues of fact preventing a finding that Simone was strictly liable under the Statute. There are three elements of a claim under the Statute:

> First, the defendant must be the owner of the dog. Second, the dog must have bitten the injured party. Finally, the bite must occur 'while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog.'
>
> [DeRobertis, 94 N.J. at 151 (quoting N.J.S.A. 4:19-16).]

In response to Russo's statement of material facts, Realty admitted each element. We reject Realty's contention that Russo was not lawfully on the property because she allegedly was warned not to pet the dog. Realty is bound by its admission in response to Russo's statement of material facts that she was lawfully on the premises. See R. 4:46-2(b). Furthermore, the video-recording clearly indicates that Russo remained inside the customer area. Even assuming an employee opined that she did not think it was a "good idea" for Russo to approach the dog, that statement falls short of withdrawing Russo's permission to be in the customer area near the dog. See DeRobertis, 94 N.J. at 152 (stating

that "permission extends to all areas that the individual may reasonably believe to be included within its scope").

We also reject Realty's argument that even if strict liability attaches, liability must be reduced by Russo's own alleged negligence. More than mere negligence is required to reduce a strictly liable defendant's comparative fault; the defendant must prove the plaintiff's conduct constituted "an unreasonable and voluntary exposure to a known risk." Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 563 (1980). In a dog bite case under the Statute, that standard requires a defendant prove that a plaintiff has "voluntarily and unreasonably come[] within reach of an animal which he [or she] knows to be dangerous, or intentionally irritates or provokes it . . . ." Pingaro v. Rossi, 322 N.J. Super. 494, 505 (App. Div. 1999). Put another way, a "defendant must show that [the] 'plaintiff knew the dog had a propensity to bite either because of the dog's known viciousness or because of the plaintiff's deliberate acts intended to incite the animal.'" Id. at 504-05 (quoting Budai v. Teague, 212 N.J. Super. 522, 525 (Law Div. 1986)).

In Pingaro, we reversed the trial court's determination that comparative negligence applied where a meter reader, who erroneously believed a dog was not present, entered a residential backyard and was bitten, notwithstanding she

10

knew a "bad dog" lived there, a sign warned "Beware of Dog," and her employer advised her not to enter yards until she was sure dogs were restrained. 322 N.J. Super. at 501-06. In Budai, a dog bit a dog-sitter after she touched the dog's irritated skin, in an apparent effort to inspect it. Although the plaintiff was "apprehensive about the dog" when she arrived, the dog had never bitten anyone before, and the dog-sitter had visited the house several times before and petted the dog without incident. 212 N.J. Super. at 525-26.

Even extending Realty all favorable inferences, it did not meet the standard we articulated in Pingaro. Assuming an employee told Russo she did not think it a "good idea" to approach Contessa, Russo did not know the dog was dangerous, nor did she deliberately provoke it. Rather, she believed it was safe to approach, with her hand open unthreateningly. The dog had no violent propensities. Russo had interacted safely with the dog before. At most, it was negligent for Russo to approach the barking dog. But, negligence is not enough. In sum, the trial court correctly held that Simone was strictly liable for Russo's damages under the Statute.

Consequently, Realty's appeal from the grant of summary judgment requires us to address the question we expressly avoided in Zukowitz, namely, "whether strict liability imposed by law against a dog owner can form the basis

11

for imposing vicarious liability on the dog owner's employer" or any other principal on whose behalf the owner was acting. 360 N.J. Super. at 73. The plaintiff in Zukowitz sought to hold her landlord liable for injuries she suffered when the superintendent's dog bit her as she stood outside the superintendent's apartment. We reversed the dismissal of the plaintiff's vicarious liability claim based on the superintendent's negligence. Id. at 74. However, we declined to address the question of vicarious liability under the Statute, because the plaintiff did not pursue her strict liability claim. Id. at 73.

We reach the question here and determine that a principal may be vicariously liable if an agent, acting in the scope of his or her authority, becomes strictly liable for a dog bite under the Statute. We discern no reason why vicarious liability should not apply under the Statute, inasmuch as vicarious liability has been applied to a dog bite claim under the common law. See Barber v. Hochstrasser, 136 N.J.L. 76, 79 (Sup. Ct. 1947). A dog-bite-plaintiff under the common law could seek to establish "absolute liability," upon proving that the owner knew or had reason to know of the dog's violent propensities; and a plaintiff could maintain an action grounded in negligence, without proving such knowledge. See DeRobertis, 94 N.J. at 153-58 (explaining the two claims). In Barber, the court held that a wife's knowledge of her dog's violent propensities

A-0663-18T1

could be imputed to her husband based on principles of agency, thereby rendering the husband liable for the damages caused when the wife's dog bit the plaintiff. "The question is essentially one of agency. The knowledge of the wife is imputable to her husband only if acquired by her while acting as his agent in relation to matters within the scope of her authority." Barber, 136 N.J.L. at 79.

Instructively, in Benjamin v. Corcoran, 268 N.J. Super. 517, 527 (App. Div. 1993), we held that the New Jersey Firemen's Home could be vicariously liable under the Tort Claims Act for the damages caused by the bite of a dog owned by a husband and wife — the assistant superintendent and the director of nursing — who lived on site. We emphasized that liability was based on the employer-employee relationship, not a landlord-tenant relationship. The fact that the defendants owned the dog as a family pet did not preclude vicarious liability. "The appropriate question is not whether it was in the scope of their employment to own a dog, but rather, whether it was within the scope of [their] . . . employment to keep the premises safe." Id. at 528.

The Statute was enacted in 1933 to remove the common law scienter requirement regarding a dog's violent propensities. See DeRobertis, 94 N.J. at 151; see also Tanga v. Tanga, 94 N.J. Super. 5, 8 (App. Div. 1967) (recognizing "legislative concern with the prior apparent barrier to recovery constituted by

the dog owner's lack of knowledge").  There is nothing in the statute that precludes imposition of vicarious liability that was available at common law. Furthermore, to construe it narrowly to do so would undermine its evident remedial purpose to broaden the grounds for assigning dog bite liability.  See Gross v. Dunham, 91 N.J. Super. 519, 522 (App. Div. 1966) (stating that the Statute is "remedial legislation entitled to a liberal interpretation").

Having determined that vicarious liability may in theory be imposed, we turn to whether Russo established, as a matter of law, that it should be imposed, justifying summary judgment; or whether Realty established, as a matter of law, that it could not, justifying dismissal.  We conclude neither party was entitled to the relief sought in their respective motions.

"[T]he doctrine of respondeat superior recognizes a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees." Carter v. Reynolds, 175 N.J. 402, 408 (2003).  "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." Meyer v. Holley, 537 U.S. 280, 285 (2003).  The Restatement (Second) of Agency §219(1) (Am. Law. Inst. 1958), which our Court has cited favorably, Carter, 175

14

N.J. at 408-09, states that "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment."

These principles apply to the relationship between Realty and Simone, as he is its managing member. A limited liability company like Realty is a legal entity apart from its members. See 3519-3513 Realty, LLC v. Law, 406 N.J. Super. 423, 426 (App. Div. 2009) (applying the distinction between member and entity). In that respect, it is like a corporation — "an artificial entity that lacks the ability to function except through the actions of its officers, directors, agents, and servants." Printing Mart-Morristown, 116 N.J. at 761.

As for the entity's liability for its agent's wrongs, "[a] corporation . . . like a natural person, is bound only by the acts of an agent done within the scope of his authority." Budelman v. White's Exp. & Transfer Co., 49 N.J. Super. 511, 521 (App. Div. 1958). The same is true of an LLC under our limited liability statute, which follows the Revised Uniform Limited Liability Act. "LLCs formed under this act and corporations are subject to the same principles for attributing to the entity the conduct of those who act or purport to act on the entity's behalf." Unif. Ltd. Liab. Co. Act, § 301 cmt. to subsec. (a) (amended 2013). "An LLC may be held liable under general agency law or the provisions of LLC statutes for wrongful acts of members or managers in the scope of the

A-0663-18T1

business or their employment." 1 Ribstein and Keatinge on Limited Liability Companies § 11:13 (2020).

As Realty's managing member, Simone was vested with broad authority to act for the company. In general, when an LLC opts to be managed by one or more managing members, the managing member "exclusively" decides "any matter relating to the activities of the company." N.J.S.A. 42:2C-37(c).[9] Thus, Realty acts through Simone and, when he commits a tort while acting in the scope of his authority as managing member, or in furtherance of Realty's business, then Realty is liable.

Russo contends that when Simone was working inside the building Realty owned, he necessarily acted as an agent for Realty, justifying imposing liability

---

[9] Although an LLC member — as distinct from a managing member — is not an agent of an LLC "solely by reason of being a member," other law may also "impos[e] liability on a limited liability company because of the person's conduct." N.J.S.A. 42:2C-27. Thus, "given the proper set of circumstances . . . the doctrine of <u>respondeat superior</u> might make an LLC liable for the tortious conduct of a member (<u>i.e.</u>, in some circumstances a member acts analogously to a 'servant' or 'employee' of the LLC)." Unif. Ltd. Liab. Co. Act, § 301 cmt. to subsec. (b) (amended 2013).

on Realty. This is plainly not so. Simone's physical presence alone does not suffice.[10]

On the other hand, we reject Realty's argument that it is not liable because Simone owned the dog, not Realty; and Simone was at most engaged in Creations' business affairs when the bite occurred. Simone's acts on behalf of Creations does not preclude his acting on behalf of Realty as well.

An agent may wear the "hats" of two masters at the same time. "[A] single act may be done to effect the purposes of two independent employers." Restatement (Second) of Agency § 226 cmt. a (1958). The two masters need not be "joint employers" for a person to be a servant of both, "if the act is within the scope of his employment for both." Ibid.; see also Abraham v. United States, 932 F.2d 900, 903 (11th Cir. 1991) (stating that "a single act may be done with the purpose of benefiting two masters and both may then be liable for the

---

[10] Notably, Russo does not contend — at least explicitly — that Realty, as a limited liability company — was a sham or alter ego of Simone, justifying the court to engage in "reverse veil piercing" and hold the LLC liable for the actions of its managing member by rejecting the LLC's separate identity. See Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 385 (4th Cir. 2018) (interpreting Delaware law to permit "reverse veil piercing[, which] attaches liability to the entity for a judgment against the individuals who hold an ownership interest in that entity" where the entity is a mere sham and alter ego of its sole managing member). Realty is a domestic LLC operating in New Jersey, and we are aware of no published case recognizing reverse veil piercing under New Jersey law.

A-0663-18T1

servant's negligence").  As we explained in <u>Pelliccioni v. Schuyler Packing Co.</u>, 140 N.J. Super. 190, 198 (App. Div. 1976), "The one servant serving two masters situation arises when two employers share equally in the direct supervision and control of one servant."

Nor is it dispositive that Simone — and not Realty — owned the dog.  Just as an employer may be vicariously liable for the tortious activity of an employee operating his or her private vehicle while serving the interests of his or her employer, <u>Carter</u>, 175 N.J. at 414-15, Realty conceivably may be vicariously liable for the damages caused by Simone's personally owned dog, provided he owned or controlled the dog at least in part to further Realty's interests.

Whether he did so is a fact question that the motion record does not resolve.  Realty admitted that it not only owned, but also controlled and operated the property.  Realty also admitted that there was no lease between Realty and Creations, nor is there any evidence that Creations paid Realty rent.  Thus, there is evidence from which a jury could infer that Realty assumed or shared the obligation to provide for the safety of visitors to the property, and to provide for security of the property itself.  The record includes evidence that Contessa remained at the property when the store was closed, which would permit a fact-finder to infer that the dog was present to protect Realty's real property, even if

18

it was also present to protect Creations' property and employees, or simply to provide Simone with canine companionship when Simone was present. In short, based on the record before us, a jury could infer that Simone, acting in the scope of his authority as managing member, owned and controlled the dog in service of Realty's interests, thereby justifying imposing vicarious liability on Realty.

Therefore, we reverse partial summary judgment imposing liability on Realty, and affirm the order denying Realty's motion to dismiss. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0663-18T1